Walter **J.** Spengler, Appellee, v. Joseph Eiger and Oscar Eiger, Appellants.

Gen. No. 33,594.

Opinion filed January 2, 1930.

LEDERER, LIVINGSTON, KAHN & ADLER, for appellants.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellee; HENRY S. MOSER, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

The plaintiff, Walter J. Spengler, filed his suit against the defendants, Joseph Eiger and Oscar Eiger, claiming that there was due him the sum of $13,750, for services rendered as a broker in procuring a purchaser for a certain real estate leasehold on the premises

located at the northwest. corner of Milwaukee and Western Avenues in the City of Chicago.

The declaration consisted of four counts and the common counts. The first count charges that on March 15, 1923, he, the plaintiff, was a duly licensed real estate broker and was employed by the defendants to procure a purchaser of the leasehold on the premises located at Milwaukee and Western Avenues, for the sum of $150,000, payable $50,000 cash and balance of $100,000 by purchase money mortgage on the leasehold, payable in annual instalments of $6,000 per year and the balance at the end of the fifth year with interest at 6 per cent, payable semi-annually. That the defendants offered to pay the fair, usual and customary charge for such services and that the charge for such services was $13,750. The three additional counts were practically the same as the first.

Attached to the common counts was an affidavit of claim which, in fact, averred that one Don Carlos S. Mitchell was the duly authorized agent of the plaintiff and, being first duly sworn, says that the demand of the plaintiff is for real estate broker's commissions and that the plaintiff procured a purchaser ready, willing and able to pay at the price and upon the terms stated by the defendants, and that there was due after allowing all deductions and set-offs, the sum of $13,750. This affidavit of claim was not signed nor was the verification accompanying it.

The defendants, however, filed an affidavit of merits in which they allege that the nature of their defense is as follows: That the defendants did not employ plaintiff as a real estate broker, as set forth in the declaration; that the plaintiff was notified that he would not be employed to sell the property unless all three brothers who owned the property appointed him; that no price could be quoted until the owners agreed upon it and that they did not agree upon it, nor upon the price alleged in the declaration. They deny that

the plaintiff procured a purchaser ready, willing and able to purchase the leasehold on said premises on the terms and at the price stated by the defendants.

The cause proceeded to trial on the declaration, plea of the general issue, the unsworn affidavit of claim, to which no exception was made, and the affidavit of merits filed with the pleas. The jury returned a verdict in favor of the plaintiff in the sum of $13,750, upon which verdict judgment was entered and from this judgment an appeal has been perfected to this court.

Robert G. Regan testified on behalf of the plaintiff that he talked with the defendant, Joseph Eiger, in January, 1923, in regard to this leasehold, and was told that he would sell it for $150,000; that he then proceeded to find a purchaser; that he saw Eiger again and was informed that he, Eiger, had a brother Oscar Eiger with whom he desired to talk concerning the proposed sale; that he saw Oscar and Joseph Eiger on the property two or three weeks after and talked over the terms of the sale with them and that Oscar Eiger, at that time said that the terms of $150,000 for the property, were satisfactory. He saw them again about the middle of March and stated that he had a customer willing to buy the property at the price named for $50,000 cash, $6,000 a year for four years and balance in five years with interest at 6 per cent, and they stated that it would be all right. That he, Regan, then procured the purchaser Liebling and informed Joseph Eiger of that fact and was then told that there was another brother named Emil Eiger, and he thereupon stated to Joseph Eiger that it would be all right to take it up with Emil, but that he had procured a purchaser, and that he had not known that there was another brother by that name with an interest in the property. He again went down to see Oscar Eiger and, at that time, the brother Emil was present and he, Regan, was informed that they would not go through with the deal for less than $175,000, unless

plaintiff would agree to waive his commission. Plaintiff further testified that he was a duly licensed real estate broker and was familiar with the rates fixed for the procuring of purchasers for long term leases by the Chicago Real Estate Board and that the rate was 4 per cent of the consideration and one year's ground rent; that the total amount due was $13,750, according to the rates fixed by the Chicago Real Estate Board.

Walter J. Spengler testified that he met Joseph Eiger in April, 1923, and that at the time, Mr. Regan and himself and Joseph Eiger were present; that at that time Eiger told him that the terms were satisfactory and to go ahead with the deal, the purchase price to be $150,000, of which $50,000 was to be in cash and the balance payable $6,000 per annum, secured by a first mortgage, and the balance in five years with interest at 6 per cent; that Spengler told him at that time that it would be necessary for them to give a guaranty policy, an abstract of title, or Torrens certificate and that the rents and taxes would have to be prorated and that the brokerage commission would be fixed according to the Chicago Real Estate Board rate, and that he was told that the terms were satisfactory. Spengler further testified that after procuring the customer, Liebling, he examined the records for the purpose of verifying the title and found that the property was in the name of the three brothers, Joseph, Oscar and Emil Eiger. He, thereupon, procured a check for $15,000 from the prospective purchaser Liebling, and prepared a contract which was exhibited in evidence marked plaintiff's exhibit 3.

Abraham M. Liebling, a witness on behalf of the plaintiff, testified that he was the Liebling whose signature was attached to the contract for the purchase of the leasehold in question and that he had deposited his check for $15,000 with Spengler and that he was ready, willing and able to pay the balance provided for in the agreement.

We have examined Liebling's testimony and are of the opinion that he was financially able to carry out the terms of the contract.

Joseph Eiger, defendant, testified that he never told Regan that he wanted to sell his interest in the property and did not recall any part of the conversation with Regan; that his interest was a one-third interest and that his brothers, Oscar and Emil, were also interested in the property; that he told Regan that the property was not for sale and that neither Regan nor Spengler ever mentioned the name of Liebling to him in connection with the property, and he never had a conversation with Regan and Spengler at which his brother Oscar was present. He testified, however, that he received a letter, marked plaintiff's exhibit 1, and turned it over to his brother Oscar.

Oscar Eiger testified that Regan spoke to him about the property and asked him whether he would listen to an offer, and he stated that he might, but that the property was not for sale and that he would have to submit the proposition to his brothers and that his brother Emil was out of the city. He testified further that he said to Regan that he could not sell the property without the consent of his two brothers; that he saw Regan later and told him that he had taken up the matter with his brothers and that they refused to sell; that Regan never showed him any papers or contracts of any kind, and that he never had heard the name of Liebling before, nor did Regan tell him that he had a check for $15,000 from the prospective purchaser.

An examination of the testimony of the Eigers discloses the fact that after the procuring of the contract, their refusal was based entirely on the fact that they had not authorized Regan to proceed in the matter, but had refused to sell the property or, at the most, would not sell without the consent of the three owners. There does not appear at any place in their testimony any objection to the contract on the ground that the terms

contained therein were objectionable, or not in conformity to their understanding of the arrangement claimed by the plaintiff.

It is insisted, however, that even though there was a contract between themselves and the broker for the sale, under the pleading plaintiff is not entitled to recover because the contract introduced in evidence did not conform to the agreement set forth in the declaration: first, because the contract provided that $15,000 earnest money be held by the plaintiff until the final transfer; second, that the vendor should furnish an abstract of title or a Torrens certificate; third, that if material defects were found in the title and not cured within 60 days, it should, at the purchaser's option, become void; fourth, that the earnest money deposited should go to pay expenses and commissions; fifth, the taxes should be prorated; sixth, the insurance premiums on the buildings should be prorated.

An examination of Spengler's testimony shows that he stated to the defendants that they were to furnish an abstract to title or a Torrens certificate or guaranty policy; that the rents and taxes were to be prorated and that the commission was to be fixed according to the rates of the Chicago Real Estate Board. The terms and conditions, to which objection is made, are contained in almost all Chicago real estate contracts. The prorating of taxes, rents and insurance rates would naturally follow and their insertion in the contract is in general use. This applies also to the furnishing of an abstract of title, as no purchaser would care to buy unless assured of the fact that his title would be good. The objections were, in a large part, frivolous. There may have been something in the retention of the $15,000 earnest money by the broker, but this could have been easily obviated, if the defendants had shown the slightest inclination to go through with the deal. If, in fact, there was an agreement between the parties, by which plaintiff was to procure a pur-

chaser for the property, any effort of the defendants might have resulted in a modification of this clause in the contract. To say the least, defendants would not have been injured if the contract had, in fact, been entered into with the retention of the deposit by the broker, as ultimately it would have to be paid and the defendants would not be injured if the commission were paid in advance.

While, as a matter of fact, the affidavit filed with the declaration was not signed or sworn to, it was evidently considered by the defendants as part of the pleadings when they filed their affidavit of merits. An affidavit of merits would not be required unless an affidavit in support of the declaration were filed. The case evidently proceeded on this theory.

The defense that there were additional terms and provisions in the contract which were not agreed to by the defendants was waived by their affidavit, because they were not set forth therein nor relied upon. *Reddig v. Looney,* 208 Ill. App. 413; *Cooper v. Anderson,* 246 Ill. App. 1.

The defendants, not having pointed out at the trial the error in the failure to sign and verify the affidavit filed in support of the declaration, cannot take advantage of it on appeal. *McKenzie v. Penfield,* 87 Ill. 38.

It is evident from the affidavit of defense, filed herein, as well as from the testimony of the defendants, that their sole reliance, for the purpose of defeating the claim, was based upon the fact that they had never authorized the sale of the property and that there was no agreement between themselves and the plaintiff. Having failed in this defense, they should not be permitted to raise objections here that were not raised at the time the contract was presented to them for signature, nor raised by them during the course of the proceedings in the trial court. If, as defendants claim, there was no contract at all, it would necessarily follow that they would not be called upon to make objec-

tions to the terms. If, on the other hand, there was a contract and they made no effort to point out objections that might have been cured, if the parties were working in good faith, then they should not be permitted to take advantage of these objections at this time.

The Supreme Court of this State in the case of *Smith v. Keeler,* 151, Ill. 518, in its opinion, says:

"The other provisions pointed out as being in excess of the authority given to appellee are those which required the vendor to furnish the buyer an abstract of title, showing the title to be good and free from all liens and incumbrances, and providing that if the purchaser should fail to perform the contract on his part, the $400 deposited should be forfeited by him as damages, and that if the abstract furnished did not show a good title, the $400 should be returned to the purchaser, and the agreement should be null and void, and making time material. Whether we may take judicial notice of the fact or not, it is a matter of common knowledge that substantially these provisions are usually embraced by dealers in real estate in Chicago in their contracts of sale, and at least a plausible argument might be made to the effect that they all come within the reasonable discretion conferred upon a real estate broker, who is employed to sell real property partly for cash and partly on time, and where no further specific directions are given as to the terms in which contracts of sale shall be made.

"But the decision of the question now before us need not be placed on that ground. Smith, when informed that his broker had found a purchaser and made a sale, made no question as to the fact of the sale or its terms, but simply declined to carry the contract out, the sole ground of his action being, that in the meantime he had received a better offer, and that he had concluded not to sell at all. The authority of his agent was not in writing, and so, as he doubtless

knew, the contract was not binding on him. Whether he was informed of the precise terms of the contract is not shown, nor does he appear to have made any inquiries on that subject. As he had determined to avail himself of his rights under the statute of frauds, that matter was wholly unimportant. His failure to call in question the assertion that a sale had been made, or to find any fault with the terms of the contract, or even to make any inquiries in relation thereto, furnishes some evidence that his broker had made a sale upon terms which were within the purview of his authority, and which, if he had not concluded to withdraw the property from the market, would have been perfectly satisfactory to him. There was some evidence, therefore, tending to support the appellee's claim to commissions, and the refusal of the court to dismiss the claim was not erroneous.''

So, in the case at bar, the fact that the defendants wholly refused to carry out the agreement, indicated that they were not interested in nor concerned with the terms or conditions of the contract and did not rely upon these terms or conditions for the purpose of raising objection to the efforts of the broker in procuring a purchaser.

Objection is also made to the introduction of plaintiff's exhibit 1. This was a letter from Spengler to Joseph Eiger advising them that Liebling had signed a contract and stating the terms. It was introduced in rebuttal, although in our opinion, it would have been competent in direct, as it was a notice to the effect that the broker had procured a purchaser for the leasehold in question, and as such notice, was competent for the purpose of showing that knowledge had been given to the defendants of the consummation of the deal. It appears, however, from the testimony of Joseph Eiger that he never heard of Liebling and did not know about him. When presented with the letter, however, he identified it as having been received by him. He testi-

fied further that he then turned it over to his brother Oscar. Oscar Eiger also testified that he did not know of Liebling nor that he had paid $15,000 by check, although his brother testified that he had turned this letter over to him. This letter contained the facts concerning which the defendants denied they had knowledge. We are of the opinion that the letter was properly admissible in evidence, both as notice to the defendants, and in contradiction of their testimony.

The objection to instruction number 1, offered on behalf of the plaintiff, is not well taken. This instruction contained the facts upon which plaintiff had based his claim and upon which he relied. It was not necessary to include in said instructions all matters of defense claimed by the defendants. It is not error to instruct a jury on plaintiff's theory of a case. The instruction in question contained the elements necessary for the plaintiff to prove in order to recover, and he was entitled to present his case on his own theory to the jury as embodied in the instruction. *City of Chicago v. Schmidt,* 107 Ill. 186.

Four instructions were given on behalf of the plaintiff and ten on behalf of the defendants. Objection is made to the modification of certain instructions offered and given as modified, on behalf of the defendants. We find no material objection to the giving of these instructions, as modified, nor do we find any reversible error in the giving or refusing of other instructions in the case.

The jury heard the evidence and observed the witnesses and found, by their verdict, that the plaintiff was entitled to recover. The trial court indorsed this verdict by entering judgment upon the same, and we are not inclined to disturb the judgment.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*

RYNER and HOLDOM, JJ., concur.