**Smart & Golee, Inc., Plaintiff-Appellee, v. Frank J. Delany and Anne Delany, Defendants-Appellants.**

**Gen. No. 49,628.**

First District, Third Division.
November 18, 1965.
Rehearing denied December 9, 1965.

Marshall E. LeSueur, of Chicago, for appellants.

Ashcraft, Olson, Beach, Alexander & Edmonds, of Chicago (William H. Alexander, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendants appeal from a judgment for $3,150, being the amount of the commission claimed by plaintiff for

the sale of the defendants' home in Evanston, Illinois. Plaintiff acted throughout by its president Orville Daily and an employee, James Kreiser. The amended complaint, upon which relief was granted, is based on the theory of an implied agency growing out of dealings between the parties which allegedly resulted in the sale. Defendants contend that no contract with Smart & Golee can be implied because that firm's only connection with the property was as a subagent of Quinlan & Tyson (Quinlan) with whom the defendants had a written contract which had terminated two months before the sale.

Plaintiff's original statement of claim was based on the written contract dated July 28, 1959, which granted an exclusive power of sale to Quinlan. Under this contract, the defendants were entitled to cooperative listing of the property and to the sales efforts of the cooperating members of the Evanston-North Shore Board of Realtors, of which both Quinlan and the plaintiff were members. Had the plaintiff been able to bring about a sale of the property as a subagent pursuant to the contract, it would have received fifty percent of the commission, with the other fifty percent going to Quinlan. This contract also provided that the agency arrangement might be terminated upon thirty days notice, except as to prospective buyers who had been shown the property before the termination became effective, in which case the agreement was to remain in effect for an additional three months.

On November 9, 1959, the Delanys gave notice of termination of the exclusive selling arrangement with Quinlan which, under the contract, would become effective on December 10, 1959, except as to prospects who had seen the house on or before that date. A sale to one in the latter class at any time between December 10, 1959, and March 10, 1960, would still have come within the provisions of the written contract, entitling each broker to fifty percent of the commission.

61

The purchasers were Gerald and June Becker, with whom the defendants made an oral agreement of sale on May 2, 1960. The Beckers were first shown the property by the plaintiff, Smart & Golee, on November 30, 1959, which at that time was operating as a subagent under the cooperative provision in the written contract with Quinlan. On December 20, 1959, there was a meeting at the Delany home attended by Daily and Kreiser representing Smart & Golee, the Beckers, their lawyer, the Delanys, and some relatives of the Beckers. Although Quinlan was not personally represented, plaintiff acknowledges that the meeting was arranged with that firm's approval, in accordance with a provision in the constitution of the Evanston-North Shore Board of Realtors that "Board members holding exclusive agreements require and insist that cooperating brokers make all appointments to show the property through the office of the exclusive agent. . . . All discussions with the owner shall be made only through the exclusive agent."

The negotiations between the buyer and the seller concerned both time and price. The Delanys wanted to complete the sale and move their family, which included school children, to Washington, D. C., by midsemester of the school year, which was at the end of January. The Beckers did not want to move into the house until the end of the school term in June. There was also a difference of approximately $2,000 in the price. The Delanys testified that they considered the matter of possession the more important. Replying to the Beckers' demand for a June sale, Delany testified that he said "If this is the case, there is no question in discussing price any more because that [meaning the time for the conclusion of the sale] is an insurmountable obstacle in my mind." The negotiations were seemingly stalemated, despite a statement by Becker that "This isn't over yet."

There followed a lull in the bargaining from that time until after March 10, 1960, the final day of the three

month extension period as set forth in the Quinlan contract. The Beckers testified that their interest in the property never abated. The only activity relating to the sale of the house, however, was a series of telephone calls among the parties, attempting to arrange suitable conditions for an experimental test of the driveway. Emil Neukranz of Quinlan was involved in those negotiations, and there is testimony that he attempted to prod the plaintiff into taking further steps to consummate the sale, specifically urging a follow-through on arranging with the parties for the driveway test. Neukranz testified that Quinlan was aware that unless the sale was made by March 10, 1960, *it would realize nothing from the exclusive agency contract.* He further testified that this concern with increasing the sales efforts met with a reply from Kreiser of Smart & Golee to "get off his neck, that I bothered him too often." This delay, it is urged by the defendants, was to enable the plaintiff to claim the entire commission.

On April 1, 1960, there was a telephone conversation between Kreiser and Mrs. Delany in which she asked plaintiff to continue to show the property to other persons, but not to the Beckers. Notwithstanding this, Smart & Golee continued to negotiate with the Beckers and introduced them to other available property. The Delanys, unaware of the plaintiff's continued participation, dealt directly with the Beckers and lowered their selling price by an amount equal to the claimed commission. Both before and after March 10, 1960, the Delanys independently advertised the house for sale, when it appeared that no other prospects had been produced by Smart & Golee. During the same period the plaintiff did no advertising of the Delany house nor did it bring any other prospective purchasers to see the house. The Delanys, believing they were free of any obligation to either realtor under the written contract after the time

limit had expired, undertook to and *did sell* the property on their own.

The only evidence of any contract between plaintiff and defendants during the period when the implied agency allegedly existed is the telephone call of April 1st hereinbefore referred to. Nonetheless, the plaintiff argues that the effect of its previous efforts with respect to the sale of defendants' house did not lapse with termination of the written agreement, but that an implied contract arose, based on the efforts made to sell the property to the Beckers.

█ While the written contract was in effect the parties were bound thereby and the time limit therein stipulated controlled. Plaintiff could not, on a theory of implied contract, escape the provisions of that limitation. Goodman v. Motor Products Corp., 22 Ill App2d 378, 161 NE2d 31; Walker v. Brown, 28 Ill 378. The plaintiff seeks to distinguish its position and contends that it was not bound by the time limit in the Quinlan contract because it was not a party thereto. Although it was not a signer of that contract, it acted as a cooperating broker thereunder, its compensation was determined thereby, and it was subject to the provisions thereof. That contract was the only basis on which the plaintiff was employed and the conditions and obligations thereof cannot be evaded by resort to the theory of an implied contract.

█ Even assuming that the written contract did not preclude suit on an implied contract, there would still be no basis for this action, which must rest on the dealings between the parties subsequent to March 10th, the last day on which the Quinlan contract controlled. The telephone call of April 1st from Kreiser to Mrs. Delany was the *only* communication between plaintiff and the defendants until after the sale, when the realtor demanded its commission. This was insufficient to support an implied contract.

The judgment is reversed.

Judgment reversed.

DEMPSEY, P. J. and SULLIVAN, J., concur.