VAN C. ARGIRIS Co., Plaintiff-Appellee, *v.* CAINE STEEL Co., Defendant-Appellant.

(No. 57097;

First District (2nd Division)—May 28, 1974.

*Rehearing denied July 15, 1974.*

Kenart M. Rahn, of Chicago, for appellant.

Jerole S. Solovy, John G. Stifler, and James A. Lowe, all of Chicago (Jenner & Block, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal is from a judgment entered in a suit filed by Van C. Argiris Company, an Illinois-licensed real estate brokerage corporation, against Caine Steel Company, an Illinois corporation, to recover a real-estate commission. The issues arise from the following facts.

In May 1962, Van C. Argiris, president of the plaintiff corporation, learned that defendant's building at 5501 West Grand Avenue in Chicago was available for sale or a long-term lease at a price of $1,250,000. He went to the building, inspected it and discussed the terms with defendant's president, Leon Caine. Later, Argiris received plans of the building and, in due course, showed the property to several prospective buyers.

On May 15, 1962, Argiris wrote a letter to the Beardsley & Piper Division, Pettibone Mulliken Corporation, telling them about defendant's building. Thereafter, on July 2 and September 13, 1962, additional letters were written to Pettibone Mulliken calling its attention to the favorable

features of defendant's building and urging the corporation to look into the possibility of acquiring the property. In January 1963, defendant temporarily withdrew its building from the market. Nonetheless, Argiris continued to communicate with Pettibone Mulliken concerning possible purchase of the property.

Then, in September 1964, defendant's president, Leon Caine, communicated with Argiris and again took up the sale of the building. Argiris suggested that his company be made defendant's exclusive agent for this purpose. This suggestion, however, was rejected. Instead, on October 15, 1964, defendant signed an agreement with Bennett & Kahnweiler, a firm of real estate brokers, under which it became exclusive agents to sell or lease defendant's building. For their compensation, the brokers, or they and any cooperating broker, were to receive a commission in the amount recommended by the Chicago Real Estate Board for sales or leases of industrial property. The agreement provided "[i]t is further understood that in the event the property is sold or leased within one hundred and twenty (120) days from the termination date of this Agreement, to a prospect to whom it was submitted by you during the continuance of said Agreement, or to anyone on behalf thereof, and whose name has been disclosed to us, then in that case we agree to pay you a broker's commission as stipulated above." By its terms, the exclusive agency was to remain in force until May 1, 1965, or "[t]hereafter until either party terminates said employment by written notice delivered to the other not less than thirty (30) days prior to the intended date of termination."

Argiris, on behalf of the plaintiff, acted as a cooperating broker under the Bennett & Kahnweiler exclusive. He wrote letters to the Pettibone Mulliken Corporation urging its interest in defendant's property. On November 5, 1964, and later in February 1965, he took officers of Pettibone Mulliken to defendant's building for inspections. Thereafter, he wrote letters to officers of Pettibone Mulliken concerning defendant's building and calling their attention to its attractive features, which Argiris thought met Pettibone's needs. Then, on May 4, 1965, defendant, by certified mail, terminated the exclusive agreement, effective June 4, 1965.

Despite this fact, Argiris continued his efforts to interest Pettibone Mulliken in buying defendant's building. On July 29, 1965, he prepared an inter-office memorandum in which he notified his sales staff that contacts for the sale of defendant's building were to be made directly with defendant's president, Leon Caine, or its assistant treasurer, Joe Shure. The memorandum stated that defendant was still asking $1,250,000, as it had when Bennett & Kahnweiler were exclusive agents. According to

Argiris, on the day he prepared the memorandum, he spoke with Leon Caine who told him to find a buyer and deal directly with him. Argiris said it was Caine who suggested that the building be handled on an "open listing basis"; and that Argiris's company would be paid a commission if it procured a buyer. Argiris said he told Caine of Pettibone Mulliken's continued interest in the building; and thereafter, wrote that corporation three letters concerning defendant's property and kept in contact with it concerning possibility of a purchase. In the meantime, Argiris had numerous telephone conversations with Caine and with Shure. Three times after July 29, 1965, he met them at the building. On these occasions, Argiris told Caine of Pettibone's efforts, through a stock offering, to obtain financing in order to purchase defendant's building. Sometime early in November 1965, Argiris called Caine and told him he was going to Europe on November 4; therefore, Mr. Campbell of his office would follow through with contacts with Pettibone Mulliken because that corporation was only awaiting completion of the stock offering so it could make a firm offer to purchase defendant's building.

On November 18, 1965, Pettibone Mulliken wrote defendant a letter of intent by which it agreed to purchase defendant's building for $1,100,-000. In a separate paragraph, Pettibone guaranteed "* * * that Caine Steel Company will not have to pay Van C. Argiris and or Bennett & Kahnweiler any brokerage commission." Defendant's building was purchased by Pettibone; and thereafter, plaintiff filed its suit for the brokerage commission it alleged became due from defendant when through its efforts Pettibone Mulliken became a purchaser of defendant's real estate. The case was heard by a jury which heard evidence, received instructions, and was given two special interrogatories submitted by defendant. The first asked, "Was the Plaintiff employed by the defendant after July 29, 1965 to procure a purchaser for the property located at 5501 West Grand Avenue, Chicago, Illinois?" The second asked, "Did the Plaintiff procure Pettibone Mulliken Corporation after July 29, 1965, as a purchaser for the property located at 5501 West Grand Avenue, Chicago, Illinois?" The jury answered both interrogatories in the affirmative and returned a verdict in favor of plaintiff, assessing its damages against defendant in the sum of $55,500.

Four issues are presented for our review. I. Whether the exclusive agency agreement with Bennett & Kahnweiler barred plaintiff's claim for a real-estate commission from the sale of defendant's real estate to the Pettibone Mulliken Corporation. II. Whether the trial court erred in allowing plaintiff to prove, by copies of letters, memoranda and conversations, all of its dealings with the defendant, including its showing of the real estate involved and its contacts with the Pettibone Mulliken

Corporation that ultimately became the purchaser of defendant's real estate. III. Whether the trial court erred in giving and refusing certain instructions to the jury. IV. Whether the evidence supports the findings and verdict of the jury.

## I.

Defendant's agreement of October 15, 1964, with Bennett & Kahnweiler, created an exclusive agency under which, as its own broker, it could have sold the property but was prohibited from appointing another agent for that purpose. (*Flynn v. La Salle National Bank*, 9 Ill.2d 129, 139, 137 N.E.2d 71; *Wozniak v. Siegle*, 226 Ill.App. 619, I.L.P. Brokers § 31.) The employment relation it created was for a period ending on a certain date, unless either party gave a 30-day prior notice of termination. Plaintiff, as a cooperating broker, was bound by the terms of that agreement. (*Smart & Golee, Inc. v. Delany*, 65 Ill.App.2d 60, 213 N.E.2d 27.) However, it appears that plaintiff's theory of the case was not that plaintiff, in its capacity as a cooperating broker under the exclusive agency agreement between defendant and Bennett & Kahnweiler, was suing for breach by defendant of the said agreement; rather, its theory was that defendant requested plaintiff to continue and encourage negotiations between defendant and the Pettibone Mulliken Corporation; that plaintiff did so, with the result that it procured the sale of defendant's building.

■■ The provision under which a broker's commission was payable if a sale or lease of defendant's building were made within 120 days after the agreement was terminated did not extend Bennett & Kahnweiler's exclusive agency; the post-termination obligation was merely one of the conditions of the employment relation. (See *Minkoff v. McLean* (1929), 295 Pa. 396, 145 A. 534.) Therefore, defendant's letter to Bennett & Kahnweiler, dated May 4, 1965, and giving notice of its desire, terminated the exclusive agency on June 4, 1965. (See *Nicholson v. Alderson*, 347 Ill.App. 496, 107 N.E.2d 39; 12 Am. Jur. 2d *Brokers* § 58; I.L.P. *Brokers* § 28.) For these reasons, defendant's exclusive agency agreement with Bennett & Kahnweiler did not bar plaintiff's claim for a real estate commission for the sale of defendant's real estate to the Pettibone Mulliken Corporation.

## II.

In proving its claim for the commission, plaintiff offered and, over defendant's objections, the trial court admitted, evidence consisting of letters and testimony of Argiris concerning the unsuccessful showing of defendant's property to two corporations. In addition, and similarly over defendant's objections, plaintiff was allowed to prove, by copies of

three letters and Argiris's testimony, that it wrote to the Beardsley & Piper Division of Pettibone Mulliken concerning defendant's building. As to the letters, Argiris testified that they were mailed by his office and addressed to the particular official of Pettibone Mulliken. In one instance, the official in question denied having received the letters addressed to him. However, it is well established that testimony showing that a letter was mailed and denial that it was received raise a question to be resolved by the trier of the fact. (*Werdell v. Turzynski*, 128 Ill.App.2d 139, 262 N.E.2d 833.) Therefore, it was for the jury to decide whether the letters were mailed and whether they were received. See *Winkfield v. American Continental Insurance Co.*, 110 Ill.App.2d 156, 249 N.E.2d 174.

Plaintiff was also permitted to prove by Argiris that in 1962 defendant engaged its services as a real estate broker and that plaintiff functioned in that capacity, although defendant withdrew its property from the market more than 2 years before the time plaintiff claimed it procured a buyer ready and able to purchase the real estate in question. In addition, plaintiff was permitted to show by Argiris's testimony, and by copies of letters, the efforts it made as a cooperating broker with Bennett and Kahnweiler. Over defendant's objections, plaintiff offered and the trial court admitted copies of inter-office memoranda and communications with defendant which Argiris prepared after June 4, 1965.

■■ In deciding whether admission of this evidence was error, we observe that none of it was received to prove value of the services plaintiff rendered or to establish the amount of compensation to which it was entitled. This evidence was offered to prove that in July of 1965 defendant employed plaintiff to procure a buyer for its building. Therefore, this case is distinguishable from the one on which defendant relies, *Fred W. Hoch Associates, Inc. v. Western Newspaper Union, Inc.* (1955), 308 N.Y. 461, 126 N.E.2d 749, where the New York Court of Appeals held it was error to permit a broker to prove his unsuccessful efforts "as part of the services rendered" by him. The letters, memoranda and Argiris's testimony concerning conversations with Caine were introduced to show the conduct of the parties and plaintiff's efforts in procuring a purchaser for defendant's property. They were admissible. (See *Vancil v. Walter*, 323 Ill.App. 291, 55 N.E.2d 305; *Voellinger v. Kohl*, 261 Ill.App. 271; *Spengler v. Eiger*, 255 Ill.App. 322; I.L.P. Brokers § 104; 12 C.J.S. Brokers, § 113.) Therefore, the trial court did not err in allowing plaintiff to prove by copies of letters, memoranda and conversations, all of its dealings with the defendant, including its showing of defendant's building and plaintiff's contacts with Pettibone Mulliken, the corporation that ultimately purchased defendant's real estate. Compare *Greenwald v.*

*Lidsker,* 337 Ill.App. 654, 85 N.E.2d 467; *Hess v. Canode,* 257 Ill.App. 535.

## III.

After the jury heard this evidence, the parties met in a jury instruction conference. Defendant, through its counsel, asserted that its exclusive agency agreement with Bennett & Kahnweiler remained in force until October 2, 1965. Defendant argued that although the agreement was terminated on June 4, 1965, it was subject to a 120-day post-termination period which would have obliged defendant to pay a commission if a sale or lease were made to a prospect who had been shown the building during existence of the agreement. Accordingly, defendant requested the trial court to instruct the jury that plaintiff had the burden of proving that after October 2, 1965, it employed the plaintiff to procure a purchaser for its building; and after that date, plaintiff procured the Pettibone Mulliken Corporation as a purchaser for defendant's property. The trial court refused to give the jury that instruction. Then, defendant, insisting on its contention that the Bennett & Kahnweiler agreement continued in existence until October 2, 1965, requested that the jury be given two instructions which told it that if it found plaintiff procured Pettibone Mulliken as a purchaser of defendant's property during the Bennett & Kahnweiler agreement, or while plaintiff was working as a cooperating broker, then it was to find in defendant's favor. The trial court refused to give either instruction. Instead, over defendant's objection, the court gave an instruction tendered by plaintiff which told the jury:

> "In order for the plaintiff to be regarded as the procuring cause of the sale of the building located at 5501 West Grand Avenue, the plaintiff must show that he was instrumental in bringing the parties together. It is not necessary that the buyer was actually introduced to the defendant by the plaintiff. It is sufficient if the sale was effected through the efforts of the plaintiff or through information derived from him."

In deciding whether it was error for the trial court to refuse defendant's three instructions and give the instruction tendered by plaintiff, we bear in mind that plaintiff did not sue as a cooperating broker who sought to enforce the terms of the Bennett & Kahnweiler exclusive agreement. Plaintiff sued to recover on what it claimed was an agreement in July of 1965 by which defendant employed it to procure a purchaser for its real estate. As we have already decided, the exclusive agency was terminated by defendant on June 4, 1965. Therefore, defendant's tendered instructions, all predicated on the contention that the exclusive agree-

322

ment continued in force until October 2, 1965, did not correctly state the law and would have misled the jury. Instructions that incorrectly state the law and mislead the jury should not be given. See *Krensky v. Lynch*, 240 Ill.App. 28; *Anderson v. Elden*, 125 Ill.App.2d 220, 260 N.E.2d 485. ■■ Plaintiff's instruction, however, correctly stated the law and was applicable to the evidence of the case. (*Doss v. Kirk*, 8 Ill.App.2d 536, 132 N.E.2d 49; *Graff v. Whitehouse*, 71 Ill.App.2d 412, 219 N.E.2d 128.) A broker's right to a commission depends on whether the sale was procured or effected through his efforts or through information derived from him, and cannot be defeated by the owner's making a sale himself or through another broker. (*Chiagouris v. Continental Trailways*, 50 Ill.App.2d 196, 200 N.E.2d 399.) Therefore, the trial court did not err in giving the instruction tendered by plaintiff or in refusing the three instructions tendered by the defendant.

IV.

On plaintiff's behalf, the jury heard Van C. Argiris, Leon Caine as an adverse witness, and Richard P. O'Neill, who was present in November 1964, when Argiris took representatives of the Pettibone Mulliken Corporation to inspect defendant's building. In addition, plaintiff offered 26 exhibits which were admitted in evidence. Among these were carbon copies of letters between the parties, letters plaintiff wrote to Pettibone Mulliken concerning defendant's building, copies of memoranda and a Xerox copy of the letter Pettibone Mulliken wrote defendant when it decided to buy the building. On defendant's behalf, the jury heard Caine as a defense witness, E. J. Seifert, president of Pettibone Mulliken and Joe Shure who was defendant's comptroller and assistant treasurer. Defendant offered 12 exhibits; but only four were admitted in evidence: a copy of the exclusive agency agreement with Bennett & Kahnweiler, copies of two letters and the copy of the memorandum.

Argiris's testimony, plaintiff's principal evidence, was sharply contradicted by Caine. According to Argiris, Caine, either on July 29, 1965, or thereafter, through informal conversations by telephone and in person, employed plaintiff to procure a purchaser for defendant's building and promised to pay a commission in the amount customarily paid real estate brokers for sales or leases of industrial property. According to Caine, these things did not occur. Therefore, on this conflicting evidence, it was for the jury to decide whether on and after July 29, 1965, defendant, through Caine, employed plaintiff to procure a purchaser for its real estate, and whether plaintiff procured Pettibone Mulliken, which purchased defendant's property. *Wright v. Olson*, 191 Ill.App. 272; *Anderson v. Elden*, 125 Ill.App.2d 220, 260 N.E.2d 485.

■■ No particular form of words is necessary to engage the services of a real estate broker. (*Greenwald v. Marcus*, 3 Ill.App.2d 495, 123 N.E.2d 139.) All that is required is action by the broker with consent of the principal, consent given in writing, orally, or by implication from conduct of the parties. *O'Dea v. Throm*, 250 Ill.App. 577; *Dickerson Realtors, Inc. v. Frewert*, 16 Ill.App.3d 1060, 307 N.E.2d 445; 12 C.J.S. *Brokers* § 12.

■■ In this case, by Argiris's testimony, plaintiff proved that defendant, through Caine, employed it to act as a broker to sell the real estate involved. Argiris's testimony, itself plausible and believable, found support in the exhibits, the testimony of O'Neill, and in the evidence introduced by defendant. The jury accepted plaintiff's version of the transactions between the parties. In our judgment, the evidence adequately supports its findings and verdict. *Crilly v. Young*, 152 Ill.App. 72; *Scheske v. Wiechert*, 2 Ill.App.2d 331, 119 N.E.2d 508. The judgment is affirmed.

Affirmed.

HAYES, P. J. and STAMOS, J., concur.