GEORGE ELLIOT, Plaintiff-Appellant, *v.* VILLA PARK TRUST & SAVINGS BANK *et al.*, Defendants-Appellees.

Second District   No. 77-181

Opinion filed August 30, 1978.

Walter P. Maksym, Jr., of Wheaton, and Breen & Lucas, of Addison, for appellant.

Daniels & Faris, of Elmhurst, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Chattels in which the defendant Villa Park Trust & Savings Bank held a security interest were left in the premises of the plaintiff George Elliot by

a tenant upon termination of his lease. The plaintiff's suit to recover storage charges against the bank was denied in a bench trial. He appeals. Whether the bank took possession of the chattels under circumstances which would imply an agreement to pay storage charges and if so whether damages were properly proved are the compelling issues.

Much of the testimony is undisputed. Elliot rented a portion of his building to John Huff, a nonparty, who operated a machine shop. Huff experienced financial difficulties and terminated his lease on June 15, 1975; filed for bankruptcy on August 25, 1975, and thereafter was discharged in bankruptcy. Huff left behind lathing and milling equipment, grinders, drilling lathes, punch presses and other equipment. Some time between June 16 and June 19 Donald Finlay (made a defendant individually and as agent of the bank) met with Elliot at the premises. Finlay, as assistant vice president of the bank, testified that he identified himself as from the bank and told Elliot that the bank had a security interest in the property. He said his purpose for going to the premises was to see that the security interest was preserved; that he was concerned that persons passing through the shop would have access to the chucks, collets and small tools which represented a substantial value of the property left by Huff in which the bank had a security interest; that he made an inventory of all of the equipment and placed the movable items in an office space, closing the self-locking door behind him. Within a week of the first meeting Finlay returned with a machinery broker whose purpose was to appraise the equipment. It is also undisputed that the bank wrote to Elliot on October 11, 1975, directing him to release the equipment to a purchaser. On October 15 Finlay and Elliot met a third time together with the buyer. Finlay testified he was there to see if all of the items purchased were present. At this meeting Elliot asked what rent was to be paid and Finlay referred him to Mr. Mullins, a bank officer, and to the bank's attorneys. Elliot called Mullins and was told that the bank did not think it owed any rent. Elliot testified that on the advice of counsel, which upon objection he was not permitted to specify, he released the equipment to the purchaser.

Whether Finlay expressly represented that the bank would pay for storage is in dispute. Elliot testified that at the first meeting Finlay told him that "we have now possession of the machinery and we're expecting to pay you rent for the storage of it until they dispose of it." Finlay denied that he made the statement and testified that he said they were "attempting to get permission to dispose of the equipment," and that when it was obtained "we would dispose of it as promptly as possible to avoid payment of rent." Finlay testified that permission was being sought from Huff.

The sole testimony on the issue of damages was offered in plaintiff's

case. Elliot said that the premises rented to Huff measured 3000 square feet and that the machinery and equipment used one-third of the space or 1000 square feet. Joseph Kutil, called by the plaintiff, testified that he was in the warehouse business and that in 1975 the going rate for uncrated storage of machinery was 30 cents per square foot. On this basis the storage charges would be computed at $1200 which was the sum plaintiff sought in his amended complaint.

We conclude that the finding of the trial court that the bank incurred no liability to pay for storage is against the manifest weight of the evidence.

The bank's denial that it took possession of Huff's machinery and equipment in June of 1975 is not supported by the evidence; nor is its further claim that it at no time thereafter took possession of the chattels. The bank has admitted in oral argument that Huff was in default at the time that Finlay first came to see Elliot on the premises. The court could, of course, give credibility to Finlay's testimony that at the first meeting he told Elliot that he was seeking permission to take possession of the chattels and that the bank did not through its agent take present possession. However, the actions of the bank through Finlay, its officer at the time and thereafter, can only fairly be characterized as the taking of possession on behalf of the bank. Under the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—503) the bank had no need to secure the permission of Huff to take possession. The bank as a secured party had, on default, the right to take possession of the property of its debtor without judicial process. Removal of collateral "such as heavy equipment" from the premises is not required; a lender may render the equipment unusable or dispose of it. See Ill. Ann. Stat., ch. 26, par. 9—503, Uniform Commercial Code Comments (Smith-Hurd 1974).

■■ Viewing the acts of the bank against its legal right to possess the chattels, its conduct in asserting the security interest in June of 1975, its inventorying of the property, its removal of part of the property to a more protected place on the premises, dealing with it as property which the bank intended to sell, and finally authorizing Elliot to release it to a purchaser must be characterized as the taking of possession and control. From this an obligation to pay for the benefits conferred upon it could be implied. It was, of course, not necessary that the bank, as it contends, have muniments of title before it could be charged with possession and control. And we find no evidence to support the bank's claim that the plaintiff intended to release any claim for rent when it released the property to the ultimate purchaser.

We further conclude that the plaintiff under the circumstances in this record has made out a case for recovery in implied contract for storing the personal property which the defendant with a security interest had within its possession and control.

■■ It has long been established in Illinois cases that independent of an expressed agreement or presumed intention the law implies a promise to pay reasonable compensation when valuable services are knowingly accepted. (See, *e.g., Board of Highway Commissioners v. City of Bloomington,* 253 Ill. 164, 172-175 (1911); see also *Gaslite Illinois, Inc. v. Northern Illinois Gas Co.,* 46 Ill. App. 3d 917, 924 (1976).) The essential element of a contract implied in law is the receipt of benefits by one party which it would be inequitable for him to retain without payment; predicated on the principle that no one should unjustly enrich himself at another's expense. (*First National Bank v. Glenn,* 132 Ill. App. 2d 322, 324 (1971).) The principle, for example, has been applied to permit the recovery of charges for storing property as against the holders of a chattel mortgage on personalty (*First National Bank v. Glenn,* 132 Ill. App. 2d 322 (1971); *Blakeslee's Storage Warehouse v. Turgrimson,* 176 Ill. App. 83 (1912)); and as against a creditor who has levied against the property of a debtor. (*Shaw v. Blessman,* 67 Ill. App. 2d 242 (1966).) In each of the examples the fact that the lien creditor through his conduct indicated a purpose to take control and management of the chattels resulted in his becoming liable for the subsequent storage.

The case before us is well within the rules governing implied contracts. The debtor's property was left on plaintiff's premises and plaintiff could have taken action to have it removed. (See Restatement (Second) of Property §12.3, Illus. 1 (1977); *Boston Educational Research Co. v. American Machine & Foundry Co.,* 355 F. Supp. 1272, 1277-78 (D. Mass. 1973)); the defendant bank by its agent Finlay then exercised management and control over the property ostensibly under section 9—503 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—503); for a period of several months the goods were left on the premises during which time the bank brought a machinery broker and a buyer to the premises and thereafter directed the landlord to release the chattels to the purchaser.

■■ Although the trial court did not reach the issue of damages the judge expressed the view that he was without any basis for determining what the damages are. We cannot agree. The uncontradicted testimony in plaintiff's behalf was that the subject premises measured 3000 square feet and the machinery and equipment used one-third of the premises. Expert testimony established that the going rate for machinery in storage was 30 cents a square foot. The resulting figure of $300 a month times the four months in which the property was stored amounts to $1200. It is a general rule that where testimony is uncontradicted either by positive testimony or circumstances and not inherently improbable it cannot be disregarded. (*Dill v. Widman,* 413 Ill. 448, 454 (1952).) It is recognized that in implied contract cases the proper determination of damages may be difficult

718

and often depends on the peculiar facts of the individual case with recovery usually measured by the reasonable value of the services performed. (*County of Champaign v. Hanks*, 41 Ill. App. 3d 679, 684 (1976).) Defendant's argument that the plaintiff was not a warehouseman and therefore is not entitled to be compensated on charges based on testimony of warehouse storage is unpersuasive under the particular circumstances. The alternative to using the analogy of warehouse storage would be to charge rent for the four months which concededly would be a larger measure of damages. Defendant may not be heard to complain in the absence of contradictory evidence that a more equitable measure of damages was offered by the plaintiff.

We therefore reverse the judgment and remand the cause to the trial court with directions to enter judgment in favor of the plaintiff and against the defendant Villa Park Trust & Savings Bank in the amount of $1200 with costs.

Reversed and remanded with directions.

GUILD and WOODWARD, JJ., concur.