PANORAMA OF HOMES, INC., Plaintiff-Appellant, *v.* CATHOLIC FOREIGN MISSION SOCIETY, INC., a/k/a Catholic Foreign Mission Society of America, Inc., *et al.*, Defendants-Appellees.

Second District   No. 79-103

Opinion filed May 13, 1980.

Donald G. Messinger, of Hinsdale, for appellant.

William I. Ferguson and Joseph A. Donovan, both of Donovan & Roberts, Paul A. Conarty, and Wylie & Mulherin, all of Wheaton, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an action by a cooperating broker to recover a real estate broker's commission. The original five-count complaint was dismissed by the trial court pursuant to motions and supporting affidavits; plaintiff, Panorama of Homes, Inc., then filed an amended complaint of five counts, and this was also dismissed. Plaintiff appeals the dismissal.

The complaint and attached exhibits reveal the facts hereafter set forth. On March 4, 1977, defendants, Lewis University (Lewis) and L. J. Sheridan & Co. (Sheridan), a licensed real estate broker, entered into a written, exclusive listing agreement providing for a 6 percent commission. The subject of the agreement was approximately 128 acres of land located in Glen Ellyn, Illinois. The listing agreement specifically stated that Lewis was not the fee title holder to the property; that approximately 26.75 acres of property were being purchased by Lewis pursuant to a contract with defendant Catholic Foreign Mission Society, Inc. (CFMS); that Lewis had the right of first refusal as to the remaining 101.25 acres of the parcel, and that the listing agreement was subject to the continued existence of the above-described purchase contract between Lewis and CFMS.

Upon learning that the property was being offered for sale pursuant to the exclusive listing agreement, plaintiff sought and received permission from Sheridan to cooperate in the showing and sale of the property. The complaint alleges that it was further agreed between plaintiff and Sheridan that each would participate equally in any commission earned if the property were sold through the plaintiff's efforts. Thereafter, plaintiff procured from the defendant, Christian Companies, Ltd. (Christian), an offer to purchase that part of the property to which Lewis had the right of first refusal (101.25 acres). On August 8, 1977, Lewis as seller and Christian as purchaser entered into a contract for the sale of the 101.25 acres for $2,200,000; $50,000 was paid as earnest money and the balance was due no later than one year thereafter. On October 24, 1977, Lewis notified Christian that Lewis had been forced to relinquish its right of first refusal as to the property covered by the August 8, 1977, contract and therefore it had failed to acquire title. Lewis returned the earnest money check to Christian.

On November 11, 1977, Christian and defendant Metrodyne, Inc. (Metrodyne), entered into an agreement with CFMS to purchase approximately 96.577 acres which had been part of the August 8, 1977, agreement between Lewis and Christian; the price was $2,200,000 but the method and time of payment were different as was the amount of land. Plaintiff's complaint alleged that defendant James Guido had also acquired rights in this property by virtue of an assignment purportedly made by Christian to Metrodyne and Guido.

On motions filed by the various defendants (except Sheridan), the trial court dismissed all five counts of the amended complaint and plaintiff appeals. We note that plaintiff has designated Sheridan as a defendant in this action and relief is sought against it in count V only; the record does not reveal any pleading filed on behalf of Sheridan in the trial court and likewise there is no indication that it was ever served with process or defaulted; no appearance has been filed by Sheridan in this court.

██ An action should not be dismissed if it clearly appears that a set of facts could be proved under the pleadings which would entitle plaintiff to relief. (*J. J. Harrington & Co. v. Timmerman* (1977), 50 Ill. App. 3d 404, 365 N.E.2d 721.) All facts well pleaded as well as all reasonable inferences that can be drawn therefrom must be accepted as true in considering the motion. (*J. J. Harrington & Co. v. Timmerman.*) Exhibits attached to the complaint become a part thereof for all purposes. (Ill. Rev. Stat. 1977, ch. 110, par. 36; *Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 300 N.E.2d 279.) Factual matters which are contained in the exhibits and which are inconsistent with the averments of the complaint serve to negate such averments. (*Sharkey v. Snow.*) Any averments of the complaint which conflict with the controlling facts set forth in the attached exhibits are not deemed admitted for purposes of the motion. (*Sharkey v. Snow.*) Furthermore, conclusory allegations unsupported by any other factual allegations of the complaint or the exhibits attached thereto are not considered admitted for the purpose of a motion to dismiss. (*Washington v. Courtesy Motor Sales, Inc.* (1964), 48 Ill. App. 2d 380, 199 N.E.2d 263.) We bear these principles in mind in considering the dismissal of each count.

Count I seeks $66,000 damages plus costs from Lewis; it alleges that Lewis listed certain property for sale pursuant to an exclusive listing agreement with defendant Sheridan; that plaintiff sought and received permission from Sheridan to cooperate in showing the property with any commission earned as a result of the sale of the property to a purchaser produced by the plaintiff to be shared equally by Sheridan and plaintiff. It is also alleged that plaintiff procured Christian, a ready, willing and able purchaser for the property on terms agreeable to Lewis; it further alleged that Lewis and Christian entered into an agreement for the sale of the property, a copy of the August 8, 1977, contract being attached to the complaint as an exhibit. Finally, it is alleged that Lewis had "wrongfully failed and refused" to consummate the transaction and has failed and refused to pay plaintiff's commission, which was 3 percent of the total selling price, or $66,000.

██ The exclusive listing agreement between Lewis and Sheridan stated that Lewis did not own the 101.25 acres but had only a right of first

refusal; the commission provided for therein was payable only if the property was *sold.* Furthermore, the contract that plaintiff allegedly procured between Lewis and Christian specifically provided that "[t]he closing of this contract is subject to the Seller's ability to consummate a firm purchase agreement and closing with the Society of Foreign Missions *on terms acceptable to the university.*" (Emphasis added.) This provision grants Lewis a unilateral choice as to whether or not it desired to conclude a sale under that contract. The principal basis for recovery under count I is the allegation that Lewis had "wrongfully failed and refused" to consummate the sale. This statement is conclusory and cannot be deemed admitted by the defendants' motion, and it is only reasonable to require more specific factual support than the conclusions set forth above in light of the contractual provisions described above. The applicable law is well stated in *Burr v. State Bank of St. Charles* (1951), 344 Ill. App. 332, 339, 100 N.E.2d 773, 777:

> "These descriptions * * * are mere conclusions of the pleader and are not supported by the facts set out in the pleading and are therefore not admitted by the motions to dismiss."

See also *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 841, 342 N.E.2d 290, 293.

■ Furthermore, the exclusive listing agreement between Lewis and Sheridan and the contract of sale between Lewis and Christian described above are both attached to the complaint as exhibits. The listing agreement stated that when the property in question is *sold,* Lewis agrees to pay a 6 percent commission to Sheridan. The sales contract between Lewis and Christian stated that Sheridan "brought about this sale" and is to be paid a 6 percent commission; it also stated that plaintiff was the cooperating broker. The rights of a cooperating broker are defined by the agreement between the seller and the listing broker. (*Smart & Golee, Inc. v. Delany* (1965), 65 Ill. App. 2d 60, 213 N.E.2d 27; *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 319, 314 N.E.2d 361, 364.) The language and intent of both of these exhibits clearly indicate that the right to recover the commissions specifically lies in Sheridan, not plaintiff. Plaintiff is not in privity of contract with Lewis and has not alleged any rights under the listing agreement as a third-party beneficiary. Under these circumstances, we further hold that plaintiff has no right to recover directly from Lewis by virtue of the allegations and theory set forth in count I, even assuming that Lewis did "wrongfully refuse to consummate" the transaction.

In count II, plaintiff seeks damages against Lewis and CFMS in the amount of 3 percent of the selling price of the property ($66,000). Plaintiff realleges the matters set forth in count I, except the wrongful refusal to consummate the sale, and further alleges, on information and belief,

that after defendants Lewis and Christian executed the August 8, 1977, contract for the sale of the property, each of the parties assigned their respective rights, Lewis to CFMS, and Christian (in part) to defendants Metrodyne and Guido. It is also alleged in count II that on November 11, 1977, CFMS, Metrodyne and Christian entered into a supplemental agreement for the purchase and sale of said property in conformity with said assignments. Plaintiff further "asserts" that the supplemental agreement (exhibit D) resulted from plaintiff's services in procuring a purchaser and that plaintiff is informed and believes that the transaction has been consummated. Plaintiff predicates its right to recover against CFMS on the theory that CFMS is the assignee of Lewis and thereby assumed the obligation of Lewis to pay the commission.

Damages are sought against Lewis and CFMS in this count. Plaintiff has alleged no further facts than those pleaded in count I to form a basis for liability against Lewis and as we stated, in considering count I, plaintiff is not entitled to recover against Lewis on the basis of the allegations of count I. Since CFMS allegedly took by assignment whatever rights Lewis had, it is apparent that plaintiff had no greater basis to recover against CFMS as Lewis' assignee than against Lewis.

We also note that the contract between Lewis and Christian provided for approximately 102 acres of land at a price of $2,200,000; the contract between CFMS, Christian and Metrodyne described 96.577 acres at a price of $2,200,000; this is an increase in price of over $1200 per acre. Furthermore, the latter contract specifically states that CFMS had never listed the property with any broker for sale and that it was not liable for any commission. We note also that exhibit D is not designated a supplemental agreement and it makes no reference to an alleged assignment; rather, it is the contract of sale from CFMS to Christian and Metrodyne, and it appears to be a document totally different and independent of any prior executed contract. Therefore, the trial court correctly dismissed count II of plaintiff's amended complaint because the allegations of assignment were conclusory and the conclusion alleged is negated by the exhibits attached to the complaint.

In count III, plaintiff realleges the matters set out in count II, except the theory of recovery, and further alleges that CFMS, without plaintiff's prior knowledge or consent, entered into a contract to convey the property in question for the identical price contained in the August 8, 1977, contract and did convey the property to Christian and Metrodyne or their nominee. Plaintiff also alleges that at the time CFMS entered into the contract, it knew plaintiff was the realtor who had produced the purchaser and arranged the sale; that upon consummation of the sale, plaintiff became "justly and lawfully entitled to a 3 percent commission of $60,000." By incorporating the various exhibits previously described and

the allegations of counts I and II into count III, plaintiff describes an assignment of the Lewis-Christian contract to CFMS but now seeks to set forth a cause of action based on a quasi-contract or implied-in-law-contract theory.

The sufficiency of count III of the complaint requires a consideration of the principles underlying the quasi-contract theory. The comment to section 5 of the Restatement of Contracts (1932) states in part as follows:

"Implied contracts must be distinguished from quasi-contracts, which also have often been called implied contracts or contracts implied in law. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice."

In 12 Ill. L. & Prac. *Contracts* §5 (1955), the following discussion appears:

"Contracts implied by law or quasi contracts are those which reason and justice dictate, and which, therefore, the law presumes that every man has contracted to perform, and on the presumption makes him answerable to such persons as suffer by his nonperformance. The liability exists from an implication of law arising from the facts and circumstances, independently of an agreement, or even a presumed intention of the defendant. The notion of a contract is purely fictitious, adopted for the purpose of enforcing legal duties by actions ex contractu when no contract, either express or implied, in fact exists."

■■■ Accordingly, to prevail in count III, under either a quasi-contract or implied-contract theory, plaintiff must set forth, among other things, facts that show that plaintiff became justly and lawfully entitled to a commission of 3 percent of the sales price. In making this determination, we must decide whether the defendant received a benefit which would be unjust for it to retain without paying the plaintiff therefor. We hold that the allegations of the complaint in count III fail to set forth facts whereby plaintiff became justly and lawfully entitled to the 3-percent commission. This determination is based on the following factors:

A. The services that plaintiff performed were performed for Lewis, not the defendant, CFMS;

B. At the time plaintiff performed the services, it had no expectation that it would receive payment therefor from CFMS;

C. At the time plaintiff performed the services, it was fully aware that Lewis had only a right of first refusal and that Lewis' ability to perform was contingent on its contract with CFMS;

D. There is no allegation to indicate or infer that CFMS accepted or acknowledged that plaintiff was its broker or its agent in connection with the sale of the CFMS property nor is there any

showing of any conduct on the part of CFMS that would estop it from denying plaintiff's right of recovery.[1]

Plaintiff's chief allegation appears to be that CFMS knew of plaintiff's past services pursuant to the Lewis-Sheridan listing agreement, and since this resulted in a benefit to CFMS, it should compensate the plaintiff. For the reasons set forth above, there is not a sufficient equitable basis to impose this obligation on CFMS. The trial court correctly dismissed count III.

In count IV, plaintiff seeks damages in the sum of $220,000 plus costs against Lewis, CFMS, Christian and Metrodyne. Plaintiff realleges the matters set forth in counts I and II and further alleges that the named defendants each received valuable benefits as a result of services performed by plaintiff, but that plaintiff had not been compensated. Plaintiff also alleges that defendants have therefore been unjustly enriched and that plaintiff is entitled to a reasonable commission in the amount of 10 percent of the sale price; this count also is based upon a quasi-contract theory.

As to Lewis, plaintiff, as cooperating broker, is bound by the terms of the exclusive listing agreement between defendants Lewis and Sheridan. The terms of that agreement cannot be evaded by reliance on an implied contract theory. *Smart & Golee, Inc. v. Delany.*

As to CFMS, as noted above in discussing count III, plaintiff did not allege facts sufficient to entitle it to recover against that defendant on quasi contract. With regard to Christian and Metrodyne, the listing agreement, which is attached to the complaint as Exhibit C, states that Lewis has contracted for the realtor's services. Plaintiff's rights are defined by the listing agreement (*Smart & Golee, Inc. v. Delany*); it has long been the law that a broker acting for both seller and purchaser is not entitled to a commission absent disclosure and consent of the parties (*Young v. Trainor* (1895), 158 Ill. 428, 42 N.E. 139; *Hampton v. Lackens* (1897), 72 Ill. App. 442). Since no such disclosure and consent is alleged or is apparent from the record, we hold that Exhibit C, which establishes Lewis as the seller-employer, precludes recovery against Christian and Metrodyne as purchasers. Therefore, count IV was properly dismissed as to all the above named defendants.

In count V, plaintiff seeks relief against Lewis, Metrodyne, Christian and Sheridan in the amount of $66,000 plus costs based upon a tort theory of civil conspiracy. Plaintiff realleges the matters set forth in counts I and

---

[1] Conduct on the part of a defendant that serves to estop the defendant from denying compensation to the plaintiff was construed to be an implied contract in the following cases: *Elliot v. Villa Park Trust & Savings Bank* (1978), 63 Ill. App. 3d 714, 380 N.E.2d 507; *Gaslite Illinois, Inc. v. Northern Illinois Gas Co.* (1976), 46 Ill. App. 3d 917, 362 N.E. 1060, 307 N.E.2d 445; see also *First National Bank v. Glenn* (1971), 132 Ill. App. 2d 322, 270 N.E.2d 493. Recovery on a theory of quasi-contract was denied in *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724.

II and further alleges that CFMS, Christian, Metrodyne, Lewis and Sheridan knew of plaintiff's efforts to bring about the sale of the property and that they dealt clandestinely and secretly among themselves to arrange the sales transaction and prevent the payment of the commission owed to plaintiff. It is alleged that plaintiff has suffered damage as a result of defendants' actions to cheat, deceive, and defraud plaintiff. These allegations are not admitted by defendants' motion, as they are at most general statements and conclusions unsupported by specific facts.

A civil conspiracy which gives rise to a cause of action is defined as a combination of two or more persons for the purpose of accomplishing by concerted action either a lawful purpose by an unlawful means or an unlawful purpose by a lawful means. (*Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 345 N.E.2d 186.) Plaintiff alleged merely that defendants, Lewis and Christian, entered into a contract for the purchase and sale of the property and that the transaction was never consummated. Plaintiff also alleged that Lewis and Christian assigned their respective rights and that CFMS, Christian and Metrodyne entered into what plaintiff terms a supplemental agreement. No specific facts to support an assignment were alleged, and such assignment is negated since no mention of an assignment was made in the contract between CFMS, Christian and Metrodyne. As earlier indicated, the so-called supplemental agreement was a completely different and new contract of sale from CFMS to Christian and Metrodyne; it is independent of any other document and provides no support for a civil conspiracy theory.

■■ Plaintiff cites two cases in support of the conspiracy theory of recovery. In *Dickerson Realtors, Inc. v. Frewert* (1974), 16 Ill. App. 3d 1060, 307 N.E.2d 445, no mention was made of a tort theory of recovery; recovery in *Dickerson* was based on a theory of quasi-contract or contract implied in law, and we conclude that the case is inapplicable here. In *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724, the court discussed plaintiff's claim of a civil conspiracy by which defendants deprived plaintiff of his broker's commission. The court concluded that in light of the fact that plaintiff was not legally entitled to a broker's commission, it was unlikely that defendants conspired to deprive plaintiff of a commission he was not entitled to receive. In our view, the same situation exists in the present cause since, as previously indicated, plaintiff was not entitled to receive a commission under the facts alleged in counts I through IV; since plaintiff was not entitled to a commission, defendants cannot be said to have wrongfully conspired to deprive it of something to which it was not entitled. Because of that fact and also since plaintiff only makes conclusory allegations without factual support as to the existence

of a civil conspiracy, the motion to dismiss was properly granted as to count V.

■■ We note, finally, that James Guido has been named as a defendant in paragraph six of count I of the amended complaint. However, plaintiff did not request any type of relief from or against Guido in any court. Therefore, all counts were properly dismissed as to defendant James Guido.

For the foregoing reasons, the dismissal of counts I through V of the amended complaint is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.