George P. Chiagouris, Plaintiff-Appellee, v. Continental Trailways, a Corporation and Transcontinental Bus System, Inc., a Corporation, Defendants-Appellants.

## Gen. No. 49,246.

First District, First Division.

June 15, 1964.

Rehearing denied July 9, 1964.

Olsen & Cantrill, of Chicago (Harold M. Olsen and Ben K. Miller, of counsel), for appellants.

Echt and Getzoff, of Chicago (Byron M. Getzoff and J. Edward Clair, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendants appeal from a judgment entered by the Superior Court in a nonjury trial awarding plaintiff, a licensed real-estate broker, a commission in the amount of $11,760 and costs, in an action to recover for services in procuring a tenant on a fourteen-year sublease. It is defendants' theory that as a matter of law the plaintiff had no contract of employment nor was he the procuring agent of the sublease.

Before proceeding to an account of the evidence it would be well to consider the tests laid down by previous decisions with regard to what constitutes a contract of employment. It is the law of this State that no particular form is required for the creation of a brokerage contract to sell real estate. Ordinarily all that is necessary is that the broker act with the consent of the principal, which may be given in writing, orally, or implied from the conduct of the parties. 5 ILP Brokers § 22. The broker becomes the compensable procuring agent when he has produced a purchaser, seller, or subtenant, as the case may be, who is ready, willing, and able to buy, sell, or lease, on the terms stated by the principal. Camp v. Hollis, 332 Ill App 60, 74 NE2d 31. The broker's right to a commission depends upon whether the sale was procured or effected through his efforts or through information derived from him, and cannot be defeated by the owner's making a sale himself or through another broker, and it is not necessary that the purchaser be actually introduced to the owner by the broker. Glass v. Liberty Nat. Bank of Chicago, 326 Ill App 251, 61 NE2d 167 (Abst.).

Although the testimony of the parties is the same as to some points, it varies as to crucial factual matters at issue. The trial judge believed the testimony of the plaintiff, and unless such a decision was clearly contrary to the manifest weight of the evidence or was palpably and manifestly erroneous, we will be

198

required to use the facts so elicited as the basis for our inquiry into the conclusions of law reached by the trial court. Eleopoulos v. City of Chicago, 3 Ill2d 247, 120 NE2d 555, 2 ILP Appeal and Error § 788. The evidence presented by the plaintiff may be summarized as follows:

Defendants, Continental Trailways and Transcontinental Bus System, Inc., are the lessees of premises located at 20 East Randolph Street, part of which is occupied as a bus depot. George Chiagouris, plaintiff, a licensed real-estate broker for over forty years, testified that in March or April of 1961, he heard that the defendants were seeking a subtenant for the premises. He contacted Arne Leander, who was the manager of the bus company and whom he knew, and Leander told him they were expecting to move their station to La Salle Street Station and if they did they would sublease the premises. Following this conversation Chiagouris related this information to George Alex, who is not a real-estate broker, but specialized in selling restaurant businesses, and with whom he shared office space. Alex told Chiagouris about James Verros and Abe Karns, who operated a chain of restaurants, and the four of them met on June 19th, 1961, at the offices of Chiagouris and Alex. After advising Verros and Karns that the location in question was going to be available the prospective lessees told them of their interest in the location and directed Chiagouris to get the particulars and blueprints.

Chiagouris further testified that he phoned Leander about an appointment, and a meeting was arranged for July 25th or July 27th at the Bismarck Hotel, at which time Mr. G. G. Rountree, a vice president of one of defendants' parent corporations, would be in town. At this meeting Chiagouris told Rountree that he was a real-estate broker, gave him his card, and informed him that he had submitted the premises to

199

restaurateurs Verros and Karns. In response to his inquiry Rountree told him that they wanted $42,000 for rental on a fourteen-year lease. Chiagouris said he wanted blueprints showing the space, size of the main floor, and basement. Rountree told Leander to get a blueprint and send it to Chiagouris. Leander sketched the premises at this time and gave the rough sketch to Chiagouris. Chiagouris said Rountree told him "to go ahead and go to these people and try to rent the place. The place was for rent." He further testified that after many phone calls he received the blueprints on about August 8th. He gave a copy of the blueprints and other rental information to Verros and Karns. He testified that when he could not get a definite date for another meeting he informed the defendants, by letter dated September 11, 1961, that "[i]n reference to the leasing of the stores at 20 E. Randolph Street, Chicago, as per your Blue Prints, we wish to inform you that we have submitted said stores to Mr. Abel Kearns and James Verros who are running a number of eating shops in Chicago and who will be good tenants." Chiagouris said he subsequently spoke to Rountree in October seeking an appointment, but was unsuccessful. He testified on cross-examination that he spoke to Leander after sending his letter of September 14th, inquiring when they would close the lease and he was told they were working on it. He did not remember Rountree telling him that there were many other real-estate brokers, including Fred Windchy, working on the deal. The testimony of plaintiff's witness, George Alex, substantially corroborates this testimony.

Rountree was called as an adverse witness under sec 60 of the Civil Pratice Act. He admitted that he attended the meeting at the Bismarck Hotel in July of 1961. Rountree testified that he told Chiagouris at the July meeting that he wanted $60,000

for the entire premises and denied that Chiagouris mentioned Karns and Verros as prospective tenants. He said the first time Chiagouris ever mentioned Karns and Verros was in the letter of September 12th, which he said he didn't answer. He admitted that he never told Chiagouris to discontinue his efforts to get a subtenant. He said that after many discussions and negotiations with the Fred Windchy Real Estate Agency and Karns and Verros, the latter parties increased their offer of $36,000 to $42,000, and a leasing agreement was consummated with them for a rental of $42,000 and a commission paid to the Windchy Agency.

The defendants produced five witnesses on their behalf. Rountree was recalled and testified that he began negotiations with the Fred Windchy Agency for the rental of the premises at 20 East Randolph Street in March of 1961; that he again met with Mr. Windchy on the same day and prior to seeing Mr. Chiagouris at the Bismarck Hotel. He said he told the plaintiff at that time that he had talked to other real-estate brokers, but that, "I want you to bring me the best clients with the most money." Finally he testified that Karns and Verros were first brought to his attention by the Windchy Agency during the week of his visit to Chicago in July of 1961, and that Chiagouris had not participated in any of the negotiations leading up to the final signing of the leasing agreement.

Arne Leander, the terminal manager of defendants' local bus company, testified that he operated their depot under the supervision of Rountree. His testimony substantially corroborated the evidence given by Rountree. He admitted that the July meeting with Chiagouris took place at the Bismarck Hotel. He said he met Chiagouris earlier in the spring of that year and they had lunch together on several occasions and dis-

201

cussed the leasing of 20 E. Randolph Street. He testified that on the morning of the July meeting, he and Rountree met first with McKenna of Windchy Agency and then with Karns, at which time Karns made an offer of $36,000 rental. After this meeting they met with Chiagouris. Both of these meetings took place at the Bismarck Hotel. He said that Chiagouris stated that he would be able to obtain a tenant for the premises, but he denied that he mentioned the names of Verros and Karns and he didn't think any price was discussed. He also stated that Rountree told Chiagouris that there were many other real-estate agents involved. He acknowledged that blueprints were sent to Chiagouris and admitted receiving the September 11th letter mailed to his office, but said he never responded because he had no authority to do so.

The defendants then offered the testimony of the two men who subsequently rented the premises at 20 E. Randolph Street, and whom the plaintiff alleged he had procured. Their testimony was contradictory on some of the major points at issue. James B. Verros testified that they dealt with the Windchy Agency in connection with this lease from about April or May. He said they went to the office of Chiagouris on June 19th, and on several occasions after that, and generally discussed locations for restaurants, but it was not until much later that Chiagouris mentioned the 20 E. Randolph Street premises, and this was after they had given the Windchy Agency a deposit. He said he never authorized Chiagouris to represent him in this deal, and that Chiagouris never gave him any plans nor did he discuss any price with him.

Abe Karns testified that he and Verros operate five restaurants. He said they first discussed the premises with Windchy in April or May and that at the meeting with Rountree and Windchy in July a deal was made and the contract was executed in November.

He said they met with Chiagouris frequently and they discussed many deals and that Chiagouris may have mentioned the involved premises, but they did not authorize him to represent them. He didn't tell Chiagouris about Windchy and he let Chiagouris think they were interested in the deal because "I didn't want to find some competitive bidding going on because I knew if I told him I wasn't interested he would get some other customers involved in these so I just told him I would let him know. I just carried him along that way until my position would be clear with Rountree on the figure I gave him." On cross-examination he admitted receiving plans from Chiagouris before he made a deposit on the premises.

The final witness for the defendants was Fredrick O. Windchy. Windchy testified that he is a real-estate broker and that he submitted Karns and Verros as tenants in the month of May after having discussed the matter with Rountree in the early part of that year. He related that they negotiated for some time and that he ultimately closed the deal and received his commission.

Defendants contend that plaintiff had no contract of employment with them. They argue that although defendants were encouraged to find a lessee there is no claim that plaintiff had an exclusive listing or that he brought lessees together with defendants or that he engaged in any negotiations between lessees and defendants, and therefore he is not entitled to a commission. Defendants also insist that since the Fred Windchy Agency was in fact the procuring and consummating agent the judgment in favor of plaintiff was erroneous and should be reversed.

The sole issue before us is whether, considering all the evidence and the inferences that could be reasonably drawn from it most favorable to the plaintiff, there was a total failure to prove the necessary ele-

203

ments of plaintiff's claim. The trial judge, in holding that plaintiff was entitled to a broker's commission, orally characterized the conduct of defendants as acting in bad faith towards plaintiff and stated . . ." [f]rom the revelations that were given here, it seems that the lessees dealt with him absolutely in a fraudulent manner, but it's the Court's opinion that when a real-estate man is handed plans and asked to procure prospects, and he goes out and does so, and he notifies the party in due time, that if the party does not respond, and therefore deals with the prospects and makes a deal with them, that he should pay him a commission . . ."

■ An examination by us of the record reveals that the finding of the trial court is amply supported by the evidence elicited by the plaintiff. The defendants listed the property with plaintiff with knowledge that he was a licensed real-estate broker and after a meeting mailed to him a copy of the blueprints of the premises. Chiagouris testified that the defendants' representatives gave him a price for the rental of the property and that when informed of the prospective tenants told plaintiff "to go ahead and go to these people and try to rent the place." Plaintiff then gave to Verros and Karns a copy of the floor plan of the premises which he had received from defendants and sent a letter to defendants confirming the fact that he had submitted the stores to the prospective tenants. It is true that the evidence on the part of defendants, if believed, is that the plaintiff never produced the names of Karns and Verros as lessees and that defendants never told plaintiff to go ahead and get these proposed lessees as tenants. The opinion of the trier of facts and the state of this record have, however, made it unnecessary for us to comment further on which story we would have believed. We did not have the benefit of seeing and hearing the witnesses. Suffice it to say that applying the principles

of law, stated earlier in this opinion, to the facts presented by plaintiff, a contract of employment was proven as existing between the parties.

The case of Morton v. Barney, 140 Ill App 333, cited by defendants to support their contention that plaintiff had no contract of employment with defendants is distinguishable on its facts. In that case the broker offered the premises to a prospect on the basis of a sale of the property or a 99-year lease as vacant premises. The evidence showed that the lease finally consummated with this prospect was much different from the proposition made by the broker and that the broker was not the efficient cause in the effectuation of the deal. In Morton the broker was a volunteer whose only contact with the owner of the property was an inquiry as to the asking price. The Appellate Court held that letters by the volunteer broker to the owner stating that he had offered the property to the ultimate lessee did not make out a contract of employment for himself entitling him to commissions. In the case at bar the plaintiff, Chiagouris, was told to make a deal and was given a stated rental. He submitted the name of the ultimate lessees to the lessors and later discovered that the lease had been consummated at the same terms submitted by plaintiff.

The defendants next contend that assuming Karns and Verros, the ultimate lessees, were named by Chiagouris as his prospective tenants, still there is nothing in the record from which it can be inferred that plaintiff was the procuring agent. They argued that because plaintiff did not negotiate and consummate the leasing agreement he is not entitled to a commission and cite the cases of Mammen v. Snodgrass, 13 Ill App2d 538, 142 NE2d 791; Drobnick v. Old Line Life Ins. Co. of America, 320 Ill App 232, 50 NE2d 522 and Morton v. Barney, 140 Ill App 333. These cases stand for the proposition that unless wrongfully prevented by his principal, the broker must bring about

the agreement in order to be entitled to commission. We agree with these cases in principle. However, in the instant case the plaintiff submitted the name of the ultimate lessee at the price requested by the principal. If the defendants did not plan to use the plaintiff's services, why did they not so notify him after receiving his letter of September 11th. It is not contended by defendants that any notice was ever given to plaintiff terminating his employment. The lease consummated by the Windchy Agency was the same term of tenancy at the same rental proposed by Chiagouris to his prospect. The facts and circumstances in this case clearly established that the plaintiff did not abandon his effort to conclude the matter as occurred in aforementioned cases, but indeed he was prevented in so doing by the actions of the defendants.

■ A broker cannot be deprived of his commission by the principal's unwarranted refusal to consummate the transaction with him. Purgett v. Weinrank, 219 Ill App 28; Fox v. Ryan, 240 Ill 391, 88 NE 974.

■ We are satisfied from a review of the evidence that it was a question of fact for the trial judge whether plaintiff was the primary cause of the sale. The judge having decided in plaintiff's favor, we should not disturb the judgment unless it is against the manifest weight of the evidence or clearly erroneous. We think the evidence amply supports the judgment.

The judgment of the Superior Court is therefore affirmed.

Judgment affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.