ARTHUR RUBLOFF & COMPANY, Plaintiff-Appellee, *v.* COMCO CORPORATION, Defendant-Appellant.

Second District No. 76-428

Opinion filed August 17, 1978.

Ellen Kerschner, of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellant.

Michael W. Coffield, of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Arthur Rubloff & Company, hereinafter "plaintiff," brought a contract action for a real estate leasing commission allegedly due from Comco Corporation, hereinafter "defendant." Both plaintiff and defendant moved for summary judgment on the pleadings. The trial court denied defendant's motion and granted plaintiff summary judgment and damages in the amount of $34,109.92. Defendant's motion for reconsideration or in the alternative to reduce the damage award was denied by the trial court. Defendant appeals from the entry of these orders.

In 1973, the plaintiff, through James Goodfriend, its vice-president of sales, actively engaged in obtaining office space in the Chicago area for its client, Metropolitan Life Insurance Company, hereinafter "Metropolitan." On October 8, 1973, Goodfriend met with Joseph Suster, a vice-president and leasing manager for defendant, and explained that he had an undisclosed client which needed approximately 20,000 square feet of space. Suster informed Goodfriend that the largest amount of space the defendant currently had available was about 8,000 square feet at 416 East Roosevelt Road in Wheaton, Illinois (hereinafter the Wheaton building), but that the projected floor space for a planned but unconstructed building at 1400-1500 North Farnsworth Avenue in Aurora, Illinois (hereinafter the Aurora building), would approximate 60,000 square feet. At this time Goodfriend confided to Suster that his client was Metropolitan.

On October 11, 1973, Goodfriend brought Constantin Zikas, Metropolitan's leasing manager, to a meeting with Suster and Robert Pristo, president of defendant's corporation. This was defendant's first contact with Metropolitan. At this meeting, Metropolitan orally agreed to lease approximately 20,000 square feet in the Aurora building, which would not be ready until mid-1974. Metropolitan also orally agreed to lease temporarily about 8,000 square feet at the Wheaton building because it had an immediate need for additional office space.

It would unduly prolong this opinion to further set forth the continuum of negotiations which took place in good faith between the defendant and Metropolitan over a period of approximately eight months until a lease was signed for the Aurora building on May 31, 1974. The essence of this appeal revolves around the interpretation of a real estate leasing commission agreement contained in a letter Suster sent to Goodfriend dated October 25, 1973. This letter stated the terms of the agreement concerning plaintiff's commission as follows:

"Dear Mr. Goodfriend:

This letter will evidence agreement between Arthur Rubloff & Company and Comco Corporation regarding the payment of a real estate leasing commission covering the proposed transaction between Comco corporation as Lessor, and Metropolitan Life Insurance Company, as Lessee.

We propose to lease approximately 3,800 square feet of office space to Metropolitan Life Insurance Company at 416 East Roosevelt Road, Wheaton, Illinois for approximately six months with no commission to be paid to Arthur Rubloff & Company.

At the expiration of the lease at 416 East Roosevelt Road, Wheaton, Illinois the Comco Corporation will then lease to Metropolitan Life Insurance Company approximately 18,000 square feet of office space in the six story office building to be built at Farnsworth Market square on Farnsworth Avenue in Aurora, Illinois.

We hereby agree as follows, with respect to this contemplated transaction:

1. Arthur Rubloff & Company is the sole broker, and as such, is entitled to a real estate leasing commission.
2. Commission shall be 7% of the annual first year's rental plus 2% of the balance of the rental term including options if, and when, exercised. The rental upon which the commission is based shall be the agreed upon rental as set forth in the lease document.
3. The commission shall be due and payable at the time Lessee takes possession of said space at the Farnsworth Avenue location Aurora, Illinois.
4. This agreement shall become null and void if a lease is not signed within 30 days from the date of this letter by Metropolitan Life Insurance Company.

Very truly yours,

COMCO CORPORATION"

Goodfriend signed and accepted this agreement for plaintiff only after both parties agreed to change the time period in which a lease had to be

signed by Metropolitan for plaintiff to earn a commission from 30 to *90* days—until January 24, 1974.

On December 21, 1973, Suster notified Metropolitan that the Wheaton building was available for its occupancy, and he also enclosed a revised set of proposed leases for Metropolitan's approval. The latest lease terms submitted by the defendant were still unsatisfactory to Metropolitan, and while the negotiations continued, Metropolitan moved into the Wheaton building in late December 1973, made the first rental payment on the Wheaton building on January 15, 1974, and thereafter occupied this building on a month-to-month tenancy.

Approximately a week before the expiration of the 90-day period, Suster informed Goodfriend that no leases had been signed as yet and that Goodfriend would have to take steps to insure that the January 24 expiration date was met.

On January 24, 1974, Goodfriend sent a letter to defendant which asserted that the commission agreement was satisfied because Metropolitan had signed a proposed lease on the Aurora building and had moved into the Wheaton building.

On January 30, 1974, Daniel Schuyler, Jr., general counsel for plaintiff, sent yet another letter which stated that plaintiff would be entitled to a commission on the entire space rented by Metropolitan at the Aurora building. Also, on January 30, 1974, pursuant to conversations between Suster and Zikas, the defendant agreed in principle to lease all the available space in the Aurora building to Metropolitan. On February 4, 1974, Suster confirmed the general agreement made at the January 30, 1974, meeting, and the rental per square foot was adjusted to reflect this increased rental.

Finally, following more negotiations, on May 29, 1974, Metropolitan sent a signed, final form of the proposed lease to Suster along with a set of approved floor plans for the entire building. On May 31, 1974, leases were signed by defendant's president, Pristo. Metropolitan did not move into the Aurora building until September 9, 1974, due to a construction delay caused by a strike. On December 12, 1974, plaintiff sent defendant a bill for a commission of $34,109.92, which amount was based on the entire amount of space finally leased by Metropolitan for the total term rental of $823,342.90 and computed as per the commission agreement. Defendant declined to pay this bill, and this suit ensued.

The trial court, in granting plaintiff's motion for summary judgment, basically found that the term "lease" as used in this commission agreement was ambiguous and that the terms of this contract were satisfied by Metropolitan's entering into the Wheaton lease within the applicable 90-day period. The court further found that had the parties

intended for a lease to be signed by *both* Metropolitan and the defendant, or a fully executed and enforceable lease contract within the applicable period, then the parties would have included such language in the agreement. In addition, the court believed the 90-day period was solely a time factor within which plaintiff had "to procure Metropolitan's signature to a lease, a lease being, in the court's opinion, the document normally associated with the creation of a lease obligation."

Two issues are presented for our review: (1) Whether the trial court erred in granting summary judgment for plaintiff when it found that the terms of the parties' leasing commission agreement, which required a signed lease, was fulfilled by Metropolitan's submission of a proposed lease; and (2) Whether the trial court erred in denying defendant's motion for rehearing which sought a reduction in plaintiff's commission.

Defendant contends first on appeal that the parties' agreement was not ambiguous because their contract specifically required a lease to be signed by January 24, 1973, and that no lease was signed by Metropolitan and the defendant until May 31, 1974. Defendant concedes that several sets of signed proposed leases for both properties were exchanged by the parties, but contends plaintiff was not entitled to a commission by the agreement's very terms which provided that:

> "This agreement shall become null and void if a lease is not signed within 90 days from the date of this letter by Metropolitan Life Insurance Company."

■■ We initially disagree with the defendant and find that the term "lease" as used in this agreement is ambiguous and subject to different interpretations by the parties. However, our reasons for reaching this conclusion are different from those expressed by the trial court and advanced by plaintiff on appeal.

The question presented herein, *i.e.*, the legal interpretation of terms in this real estate leasing commission agreement, is a question of law which is to be determined by a reviewing court unrestrained by the trial court's judgment. *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525.

■■ Under well-established contract principles, an agreement must be given a fair and reasonable interpretation by the courts based on a consideration of the language and provisions contained therein. (*Tater v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272; *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 360 N.E.2d 551.) If the contract language is ambiguous, prior and contemporaneous transactions and facts may be considered to ascertain the particular intent and scope in which the parties used particular terms. (*Kenny Construction Co. v. Metropolitan Sanitary District* (1971), 52 Ill.

2d 187, 288 N.E.2d 1, *appeal after remand* (1974), 56 Ill. 2d 516, 309 N.E.2d 221.) Citing *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683, our supreme court has said:

> "The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others." (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381, 370 N.E.2d 188, 191.)

In addition, any ambiguity in the contract is construed most strongly against the drafter. *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 366 N.E.2d 561.

■■ Both Rubloff (plaintiff) and Metropolitan did everything they could relative to a lease prior to 90 days from the date of the agreement of October 25, 1973, even to the extent of Metropolitan's signing and submitting a lease on December 6, 1973, for the 20,000 square feet of the Aurora building along with a check for $10,166.66 to be used as "one month's security for the Aurora building." In interpreting this ambiguous term of the lease most strongly against the drafter of this contract (the defendant), we find that the terms of this commission agreement could have been satisfied by the Aurora lease entered into January 24, 1974, by Metropolitan.

Our review of the parties' transactions and agreement shows that no lease was signed by Metropolitan when they moved into the Wheaton building on a month-to-month basis prior to the expiration of the 90-day period. In addition, Metropolitan gave defendant a check for rent on January 15, 1974, and submitted a signed lease on the Aurora building prior to the expiration of the agreement.

We must also disagree with the defendant's contention that the trial court erred in denying its motion for rehearing which sought a reduction in plaintiff's damages. Defendant contends that the trial court's award of a commission on approximately 60,000 square feet is not sustainable based on the actual terms of the agreement (18,000 square feet) reached by the parties on October 25, 1973, and it is this *contract* on which plaintiff's action was brought. Defendant also contends that the trial court erroneously considered the common law concerning the rights of the "procuring broker," in view of the existence of the parties' commission agreement. We disagree.

■■ ■ The procuring broker approach adopted by the trial court was used at common law to *imply* a contract between the broker and seller if the broker found a purchaser who was ready, willing and able to perform. The procuring broker theory has been adopted by two districts of the Illinois Appellate Court. In *Griswold v. Pierce* (1899), 86 Ill. App. 406, the Third District held that a real estate agent who furnished a

purchaser ready, willing and able to buy, is entitled to compensation for his services, and the fact that he did not bring the parties to terms within the time limit fixed by the letter of the contract did not defeat his right to recovery. Similarly, in *Federated Petroleum Services, Inc. v. Daniels* (1965), 56 Ill. App. 2d 236, 205 N.E.2d 741, the First District found that a corporate broker's numerous activities in procuring a buyer for a business during the period where his brokerage contract was in effect entitled him to a commission, even though an agreement was not completed until months later, where the broker was the procuring cause of the purchase. Recovery under similar circumstances has also been allowed by other jurisdictions. In *Humphrey v. Knobel* (1962), 78 Nev. 137, 369 P.2d 872, the Nevada Supreme Court averred that:

> "* * * where the broker has been the procuring cause * * *, although the transaction was actually closed by the owner directly with the buyer at a price less (sometimes the same, sometimes more) than the sum indicated in the brokerage contract and within a reasonable time after the expiration term of the contract, although without fraud or bad faith, recovery by the broker has been permitted." (78 Nev. 137, 142, 369 P.2d 872, 874.)

In *Wilson v. Roppolo* (1962), 207 Cal. App. 2d 276, 24 Cal. Rptr. 437, the court stated that:

> "Where the real estate broker brings the seller and buyer together and the negotiations continue beyond the expiration date of the commission agreement, the broker is still entitled to his commission." 207 Cal. App. 2d 276, 281, 24 Cal. Rptr. 437, 439.

(See also *Umphray v. Hufschmidt* (1925), 73 Cal. App. 140, 238 P. 749; *Estes v. Hotchkiss* (1923), 63 Cal. App. 284, 218 P. 605.) Thus, it is the policy of the law to protect a broker who has been employed or authorized to act and who, in good faith, has so acted. Additionally, as stated above, where the owner accepts the services of the broker and continues, without interruption, to negotiate with the lessee produced by the broker, and finally concludes a lease with the same lessee, even though the lease is not formally signed by the lessor and lessee within the time set forth in the memorandum, the lessor should not escape the payment of a commission, especially where, as here, the conclusion of the lease within the applicable time limit was not effectuated because the completion of the building was delayed—which was no fault of the plaintiff-broker.

■■■ Herein, the defendant was in complete control of the time factor. Metropolitan signed and submitted the lease for the first 18,000 square feet on December 6, 1973, and signed and submitted the lease for the remaining square footage on February 1, 1974, as a result of negotiations which continued without interruption from the day plaintiff introduced Metropolitan to defendant. Defendant, however, did not sign either

370

lease until May of 1974, and since the building was not ready for occupancy yet, perhaps defendant could have delayed signing until June, July or even August of 1974. There was complete agreement that Metropolitan was going to lease at least 20,000 square feet of the Aurora building, and as late as November 30, 1973, plaintiff notified defendant of the possibility that Metropolitan wanted to lease additional square footage. By mid-January of 1974, Metropolitan notified plaintiff that they had leased 60,000 square feet of the Aurora building. Under these circumstances, the broker is entitled to his commission, and the fact that he did not bring the parties to terms within the fixed time limit should not defeat his right to recover a commission for the full amount of the space actually rented by Metropolitan. (*Griswold v. Pierce* (1899), 86 Ill. App. 406.) Additionally, the defendant-owner's conduct in the instant case, of continuing negotiations with the prospective lessee (Metropolitan) who was procured by plaintiff-broker, even though the broker's contract to procure a lessee for the realty had expired, is, in our opinion, a waiver of the limitation of time which was fixed in the parties' contract. Accordingly, we affirm the trial court's denial of defendant's rehearing motion which requested a reduction in plaintiff's commission.

The judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

RECHENMACHER and GUILD, JJ., concur.