DIANA PILSON *et al.*, d/b/a Pilson-Wolfe Realty, Plaintiffs-Appellants, *v.* HAROLD ROUSH, JR., Defendant-Appellee.

Third District   No. 79-539

Opinion filed March 26, 1980.

John A. Hayner, of Warren, Hayner & Baxter, of Ottawa, for appellants.

Eric B. Deobler, of Peter F. Ferracuti & Associates, of Ottawa, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a summary judgment entered by the circuit court of La Salle County on the motion of the defendant Roush and against the plaintiffs Pilson and Wolfe. The events which resulted in the entry of the judgment commenced on April 13, 1977, when the defendant entered into an exclusive written listing agreement with the plaintiffs' real estate brokerage firm. The agreement provided that the plaintiffs were authorized to procure a purchaser for the defendant's home and that the selling price was to be $295,000 with a brokerage commission of 6% of the sales price. The agreement further provided as follows:

> "It is agreed that you shall have the exclusive right to sell said property for 6 months from the date hereof. It is further agreed that you shall be entitled to your commission if the property is sold during the existence of this contract by you, or the undersigned, or any other person, at a price acceptable to the undersigned. You shall also be entitled to your commission if said property is sold within two months from the expiration date hereof to any person— (or anyone acting on such person's behalf) with whom you have negotiated relative to the sale of said property, and have given written notice thereof to the undersigned, during the term of this contract."

The plaintiffs attempted to sell the home and advertised the same in a local newpaper and a regional residential guide. On or about August 17, 1977, the plaintiffs showed the home to Mr. and Mrs. Morse, who then made a written offer to purchase the property for $200,000. The defendant rejected this offer but made to the Morses a two-fold counteroffer, to-wit, that he would accept the sum of $200,000 and the home owned by the Morses, or he would accept $250,000 and the Morses would pay all commissions due the plaintiff, Pilson-Wolfe Realty.

Neither of the defendant's counteroffers were ever accepted. There were continuing efforts to sell the realty and the complaint of the plaintiffs

alleges that they had further contact with the Morses regarding a sale. In the early part of October of 1977 the plaintiff Wolfe encountered the defendant in a local bank and they discussed the real estate listing. The defendant refused to enter into a new listing but allegedly told Wolfe to continue her efforts to sell the property and specifically to keep working on the Morse's.

On December 22, 1977, nine days after the listing agreement had in all respects expired, the defendant entered into a contract to sell his home to the Morses for the sum of $210,000. The sale of the premises was consummated on January 17, 1978.

The plaintiffs' complaint alleges that they were the procuring cause of the sale and that they are entitled to a judgment in the amount of $12,600, being the sum determined as 6% of the sales price of the defendant's home. As heretofore stated, after considering the pleadings, discovery depositions and answers to interrogatories, the trial court granted the defendant's motion for summary judgment.

The sole issue presented by this appeal is the plaintiff's contention that the trial court erred in granting the defendant's motion for summary judgment, since there were triable issues of fact before the court.

An examination of the record discloses that the defendant's motion for declaratory judgment was predicated upon the fact that the sale of the real estate was consummated after the listing agreement for a term of six months and a grace period of two months had both expired and that the alleged oral agreement to the effect that the plaintiffs were granted additional time to make a sale was of no legal effect because there was no definite expiration date established and consequently the agreement or contract between the parties was void. In support of this argument propounded by the defendant, reliance was had on the following statutory provisions which became effective October 1, 1973:

> "No registrant shall obtain any written listing contract which does not provide for automatic expiration within a definite period of time. No notice of termination at the final expiration thereof shall be required. Any listing contract not containing a provision for automatic expiration shall be void." Ill. Rev. Stat. 1977, ch. 111, par. 5737.

The trial court in an opinion filed in support of its decision found that the argument advanced by the defendant was well founded in that the plaintiffs' assertion that the written contract was extended orally as the result of a conversation between plaintiff Wolfe and the defendant has no merit since it did not establish a definite termination date and therefore such a contract would be violative of the above cited statutory provision. Ill. Rev. Stat. 1977, ch. 111, par. 5737.

We agree with the trial court that the conversations between the

plaintiff and Wolfe failed to result in an extension of the listing agreement; however, in doing so this court does not rely upon or in any way interpret the statutory provision. An examination of the discovery deposition of the plaintiff Wolfe discloses that the testimony of the deponent was too vague and uncertain to support a finding that a contract or an extension of a contract had been entered into between the defendant and the plaintiffs.

In examining the record in this case we note that paragraph 9 of the complaint alleged that the plaintiffs were the procuring cause of the sale of the defendant's real estate. That the plaintiffs pursued this theory is evident by the brief filed by them in opposition to the motion for summary judgment. In the brief it is contended that even though a sale might not be consummated or made within the term time of the broker's contract, if he in fact procured a buyer he is entitled to recover his commission, and cited are the cases of *Griswold v. Pierce* (1899), 86 Ill. App. 406, and *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361. The theory of procurement has long been recognized by the reviewing courts. (*Griswold v. Pierce* (1899), 86 Ill. App. 406.) That the theory of procurement is still viable is illustrated by a series of recent decisions by our reviewing courts. *Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 392 N.E.2d 697; *Arthur Robloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 380 N.E.2d 15; and *Brown v. Miller* (1977), 45 Ill. App. 3d 970, 360 N.E.2d 585.

In the instant case it is established by the record that there is no question but what the plaintiffs were solely responsible for procuring the Morses as interested parties and apparently the only seriously interested parties regarding the purchase of the defendant's real estate. That the sale to the Morses was arranged nine days after the listing agreement expired is not determinative of the issue of procurement. When a contract for deed was entered into between the defendants and Morse or when there was a delivery of deed is not the sole concern in procurement cases. Of paramount importance is the resolution as to the point of time when there was a meeting of the minds between a vendor and purchaser to the effect that there was to be a sale. *Bolger v. Danley Lumber Co.* (1979), 77 Ill. App. 3d 207, 395 N.E.2d 1066.

That in the instant case the purchase price was less than that indicated in the brokerage contract is not determinative but only a factor to be considered in deciding the applicability of the procurement theory. In the case of *Rubloff v. Comco Corp.* the reviewing court relied upon a decision of the Nevada Supreme Court which stated:

> "Where the broker has been the procuring cause * * *, although the transaction was actually closed by the owner directly with the buyer at a price less (sometimes the same, sometimes more) than the sum indicated in the brokerage contract and within a

reasonable time after the expiration term of the contract, although without fraud or bad faith, recovery by the broker has been permitted." *Humphrey v. Knobel* (1962), 78 Nev. 137, 142, 369 P.2d 872, 874.

■■ That the trial court granted the motion for summary judgment on the grounds that the contract between the plaintiffs and defendant was for a specific period of time and the alleged oral agreement extending the same would be for an indefinite period of time and in violation of section 19 of the Real Estate Brokers and Salesman License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5737) does not preclude this court from considering any other theories of recovery advanced in the trial court. As previously stated, the plaintiff raised the theory of procurement and the defendant in a reply brief presented to the trial court his response to this theory. The response is to the effect that the two-month grace period made a part of the contract was to prevent any claim for a commission by the plaintiffs for sales occurring after the expiration of the period. We fail to find this a logical explanation, since, following the reasoning of the defendant, then any contract providing a grace period would bar a commission predicated upon the procurement theory even though there was bad faith on the part of the seller.

■■ In the instant case we do not hold that the plaintiffs are entitled *pro se* to a commission because they procured the ultimate purchaser of the property. We also do not intend to impute or infer bad faith on the part of the defendant; however, we do hold that there is a triable issue of fact, to-wit, were the plaintiffs the procuring cause of the sale in that the defendant and the purchaser had a meeting of the minds pertaining to the purchase of the property during the time period of the brokerage contract? If on examination of the record it can be fairly said that a triable issue of fact exists then a motion for summary judgment should not be granted. *Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 169 N.E.2d 73.

Taken for consideration with this case was a motion by the plaintiffs to dismiss this appeal on the grounds that the defendant failed to file a brief. The brief was filed, and it is obvious that this court considered the same, so the motion to dismiss is denied.

For the foregoing reasons the judgment of the circuit court of La Salle County is reversed and this case is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.