TOM BRINKOETTER & COMPANY, Plaintiff-Appellee, *v.* CRESTHAVEN COUNTRY CLUB, INC., Defendant-Appellant.

Fourth District   No. 4—83—0164

Opinion filed October 5, 1983.—Rehearing denied November 2, 1983.

Vernon H. Houchen, of Decatur, for appellant.

Michael J. Kehart and Mark D. Gibson, both of Welsh, Kehart, Shafter & Hughes, P.C., of Decatur, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On October 28, 1981, Tom Brinkoetter & Company, Realtors, filed a two-count complaint in the circuit court of Macon County against defendant, Cresthaven Country Club, Inc., seeking to recover a commission for the sale of realty. One count sought recovery under the terms of a listing agreement entered into between the parties. The other count sought recovery under the theory that even if plaintiff was not entitled to a commission under the contract, it was entitled to one because it had been the "procuring cause" of the sale of the covered property after the expiration of the term of the listing agreement and an additional grace period.

After a jury trial, the circuit court entered a judgment on December 22, 1982, on a general verdict in favor of plaintiff and against defendant fixing damages in the sum of $50,000. Defendant has appealed. We need only consider defendant's contention that the evidence did not support recovery on either the terms of the listing agreement or the doctrine of "procuring cause." We agree with defendant that the circumstances shown by the evidence did not permit recovery under either theory.

The evidence significant to our decision was virtually undisputed. Defendant owned a 60-acre tract improved as a country club, and an option to purchase an adjacent, unimproved 40-acre tract for $2,000

per acre. All of that land was in Macon County. In September 1980, plagued by financial problems, defendant entered into an exclusive listing agreement for the sale of the entire 100 acres described above. In its final form, the agreement stated that it would expire September 11, 1981.

The listing agreement gave plaintiff the exclusive right to sell the property during the term of the agreement for the sum of $750,000. The provision for the listing broker's compensation stated that defendant would pay plaintiff a 10% commission on any sale:

> "made during the term of this listing, or within six months thereafter, if made to a purchaser with whom the owner, the listing broker or any other broker may have had negotiations upon said terms herein specified, *or upon such terms as are acceptable to and accepted by Owner, during the term of this exclusive listing.*" (Emphasis added.)

In late 1980, Dean Richard Blancett, a salesman for plaintiff, contacted C. Edward Taylor and subsequently negotiated with him concerning Taylor's purchase of the 100 acres. A sale at a price of $650,000 was tentatively agreed upon, but the sale was not consummated because of Taylor's lack of financing and inability to satisfy other requirements. Then, in March of 1981, at the demand of defendant's principal creditor, Northtown Bank of Decatur, defendant placed the property in a land trust with that bank as trustee and defendant as beneficial owner. Defendant also agreed that if it had not sold the property by October 1, 1981, the bank could sell the property as long as it sold for at least $450,000.

After the property was placed in a land trust, Tom Brinkoetter, president and principal shareholder of plaintiff, indicated a willingness to purchase the property for $600,000. The evidence indicates that he took the position only after witnessing the difficulty involved in finding a purchaser. Defendant, acting through its board of directors, indicated that it would not sell the property then for that price, and made a 60-day lease of the property for oil well development. When that lease expired, further negotiations were conducted with Tom Brinkoetter, but no binding agreement was reached.

The property had not been sold by September 11, 1981. That was the date of the expiration of the listing agreement and the beginning of the "six months thereafter" period described in the provision of the listing agreement concerning the broker's compensation. Prior to that date, plaintiff had asked for an extension of the listing agreement and defendant had refused to grant it. After that date, defendant decided to make its own sale of the property by asking for sealed

bids with a minimum price of $490,000 required. Bids were solicited and on September 26, 1981, the bids were opened. The only bid was one in the sum of $500,000 by C. Edward Taylor and his mother, Georgiana Taylor. The bid was accepted. The purchase price was paid by Georgiana Taylor and defendant's beneficial interest assigned to her. Plaintiff's claim for a commission arose from this sale.

Plaintiff maintains first that the terms of the listing agreement entitled it to a $50,000 commission. The sale did take place within the six-month period. Plaintiff conducted considerable negotiations with C. Edward Taylor during the period of the agreement. We need not decide whether C. Edward Taylor could be considered to be a purchaser because we hold that the evidence failed, as a matter of law, to show that the sale was made on "terms as are acceptable to and accepted by [defendant] during the term of this listing."

Plaintiff maintains that the sale price of $500,000 was "acceptable and accepted" by defendant during the term of the listing because in March of 1981, defendant agreed with Northtown Bank that after October 1,1981, the bank could sell the property for a price not lower than $450,000 if defendant had not sold the property by then. However, any acceptance by defendant of that figure was conditioned upon its failure to make a prior sale. After the March agreement, defendant originally found unacceptable Tom Brinkoetter's proposal for a sale at $600,000. Only after the listing had expired and defendant had put the property up for bidding and been unable to get a higher price did defendant agree to a sale for $500,000. The fixing of the minimum price of the bidding at $490,000 was not an acceptance of that sale price because the possibility existed that defendant might get more. Its acceptance of a sale at $490,000 was contingent upon no greater price being offered.

Plaintiff's contention that, regardless of the listing agreement, it was entitled to a commission because the sale occurred within a reasonable time after the expiration of the listing and it was the "procuring cause" of the sale, presents a complicated question. Although defendant contends that the sale was to Georgiana Taylor and not to C. Edward Taylor, for the purpose of our discussion of this issue we assume *arguendo* that C. Edward Taylor was a purchaser and plaintiff was the "procuring cause." The issue is whether the "procuring cause" doctrine is applicable under the undisputed circumstances here including the fact that the listing agreement set forth the conditions under which plaintiff was entitled to a commission for a sale taking place after the expiration of the listing agreement. We conclude that the doctrine does not apply here.

■ Recognition that an agent, who was a procuring cause of a sale, may have a right to a commission, although the term of the contract of listing has expired before the sale has been consummated, has existed in this State since *Griswold v. Pierce* (1899), 86 Ill. App. 406. However, there, unlike here, the contract made no express provision for the circumstances when such a commission would be earned. In seeking to invoke the doctrine here, plaintiff relies partly upon the cases of *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361, *Graff v. Whitehouse* (1966), 71 Ill. App. 2d 412, 219 N.E.2d 128, *Chiagouris v. Continental Trailways* (1964), 50 Ill. App. 2d 196, 200 N.E.2d 399, *Hackett v. Farkas* (1958), 19 Ill. App. 2d 309, 152 N.E.2d 475, and *Doss v. Kirk* (1956), 8 Ill. App. 2d 536, 132 N.E.2d 49. In *Van C. Argiris* and *Graff* the agent had been requested by the seller to continue efforts after the expiration of the listing agreement. In the other cases there was no formal listing agreement between the parties. However, the evidence in those cases supported a determination that the seller had expressly or impliedly requested the plaintiffs to find a buyer for the property sold. Here, defendant had expressly refused to extend the listing and there was no evidence even implying that it had sought for the plaintiff to continue to seek buyers.

■ More analogous to the instant case is that of *Pilson v. Roush* (1980), 82 Ill. App. 3d 187, 402 N.E.2d 906, where suit was brought by real estate brokers to collect a commission. The trial court had entered a summary judgment for the defendant. Similar to the situation here, the listing agreement gave the plaintiffs an exclusive listing for six months and an additional right to commission if a sale was made in a two-month period thereafter to one with whom plaintiffs had negotiated and about whom plaintiffs had notified the defendant-seller. Nine days after the end of the additional two-month period, a contract for sale was entered into with a couple whom plaintiffs had contacted. In reversing and remanding for a trial on the merits, the appellate court stated that a factual question existed as to whether (1) there had been an actual meeting of minds between the buyer and seller during the two-month period, and (2) plaintiffs had been the procuring cause of the sale. The court concluded that if both factors were found to exist, plaintiffs would be entitled to recover.

In *Cunningham v. Aeschliman* (1973), 54 Ill. 2d 227, 296 N.E.2d 326, the supreme court decided a case which concerned the law of Indiana in regard to the right of a broker to a commission. The plaintiff-broker and defendant-seller had agreed upon plaintiff having an exclusive listing with an additional right to a commission for a six-

month period if a sale was made in that period to one who had been directly or indirectly obtained by the plaintiff. Within the additional period the defendant entered into a lease with an option to purchase with a purchaser obtained by the plaintiff. The option was exercised after the six-month period. In a split decision the court held that the plaintiff was entitled to recover on those facts. The opinion emphasized that the date of signing of the lease was the significant event rather than the date of the exercise of the option.

In *Arthur Rubloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 380 N.E.2d 15, a judgment for a commission obtained by a leasing agent against a landlord was affirmed. The agent had procured the eventual lessee and engaged in lengthy negotiations, but the leasing had not been consummated within the time period in which a commission could be earned under the terms of the listing agreement. Evidence indicated that immediately upon the expiration of that time, the landlord had taken charge of negotiations. The court noted that the landlord had control of when the property would be ready for occupancy and thus controlled the time when the negotiations would be likely to result in an agreement. Under these circumstances, the appellate court held the evidence supported the award.

■ In situations where sales persons were the procuring cause of sales and certain other factors made it equitable for the recovery of commissions, the decisions in *Pilson, Cunningham,* and *Arthur Rubloff* permitted recovery in contradiction to the express terms of listing agreements. None of those situations existed here. The crucial condition of the listing agreement here required that a subsequent sale be at a price agreeable to and agreed on by the defendant during the original term of the agreement. No such provision restricted claims for commissions in those cases. Sale of property at least within the grace period was the crucial condition in *Pilson.* The appellate court found that a question of fact existed as to whether that condition had been informally fulfilled. In *Cunningham,* the execution within the required period of an option which was later exercised was held to be the equivalent of a completed sale. Nothing that occurred here during the listing period terminating September 11, 1981, could be deemed as either informal compliance with or the equivalent of an agreement by defendant to accept a sale price as low as $500,000. Unlike in *Arthur Rubloff,* the property here was not in a process of construction which could be controlled by the owner in such manner as to make it unavailable until the expiration of the stated period for the salesperson to earn a commission. Moreover, defendant did not negotiate with the Taylors after September 11, 1981.

█ Plaintiff's being the procuring cause of the ultimate sale to the Taylors did not entitle it to a commission under the circumstances shown.

The failure of the evidence to support a ground upon which plaintiff can recover requires reversal of the judgment on appeal. It is so ordered.

Reversed.

MILLS and MILLER, JJ., concur.