LOUIS LYONS, d/b/a Louis Lyons Realty, Plaintiff-Appellee, v. DAVID SHANE *et al.*, Defendants-Appellants.

Fourth District   No. 4—84—0565

Opinion filed June 10, 1985.—Rehearing denied July 11, 1985.

Mercer Turner, of Bloomington, for appellants.

Robert P. Follmer, of Strock & Follmer, Ltd., of Pontiac, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

After a bench trial, the circuit court of Livingston County found the defendants, David and Carrie Shane, liable to the plaintiff, Louis Lyons, for a commission on the sale of their property. The defendants appeal that judgment. At issue is whether, under the circumstances, the plaintiff was entitled to a broker's commission, although the sale of the property occurred after the listing agreement between the parties had expired.

The defendants desired to sell their farmland, which they had been renting to their sons. On June 7, 1982, the defendants entered into a 30-day listing agreement with Lyons. On the same day, Lyons contacted John Maley to see if he was interested in the property. Maley made a written offer, which Lyons delivered to the defendants. After a series of counteroffers made through Lyons, the defendants and Maley signed an offer and acceptance on June 9. It provided that Maley would receive the landlord's share of the 1982 crop. The contract also was contingent upon Maley's ability to receive financing from the Federal Land Bank within 20 days.

Maley did not get the required financing from the Federal Land Bank. In the middle of July, Lyons met with the defendants at their home. He testified they were disappointed but wanted to see if Maley could obtain other financing. After this meeting, Lyons still considered himself to be the defendants' broker. Mrs. Shane testified Lyons told them he was through because there was nothing more he could do. She also stated she and her husband still wanted to sell to Maley and were hoping he could secure other financing.

Lyons testified he had two more contacts with the defendants after that date. In late July, he called them to tell them he was leaving for a two-week vacation. When he returned, he learned Maley and the defendants had worked out a possible deal. Mr. Shane told Lyons that no commission would be paid. According to Maley, after the Federal Land Bank had turned him down, Lyons took no further part in the negotiations except to make at least one unsuccessful attempt to find alternative financing. Maley also testified that he was interested in purchasing the property at all times so long as he could find reasonable financing.

After Lyons' visit to the defendants in mid-July, the defendants' son, Kenneth Shane, took over the negotiations. Between that time

and the final sale on November 10, he and Maley had 10 to 15 meetings without Lyons. The final contract differed from the one made on June 9 in three aspects. The original purchase price had been $621,000, but the final price was $598,000. Both Maley and the defendants' son stated the difference reflected the fact that Maley would not get the landlord's share of the 1982 crop because it had already been harvested. Because the crop had been harvested, Maley would not need possession until March 1. The final contract, therefore, provided for a $20,000 interest credit, which represented the interest that Maley would have had to pay between November and March 1. Finally, the defendants agreed to carry a $100,000 second mortgage to help Maley finance the purchase.

Despite these differences, the trial court found a striking similarity between the June and November contracts. The court noted Lyons had found a buyer who was both ready and willing to purchase the property. Due to his inability to make financial arrangements, however, the buyer was not actually able to purchase until the listing agreement had expired. The court found the defendants liable for Lyons' commission because they simply continued the negotiations begun by Lyons.

The defendants argue the trial court erred as a matter of law in holding that the plaintiff was entitled to his commission even though the sale was made after the listing agreement had expired. They contend there must be a seller-broker relationship in existence when the sale is actually made. They cite *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 400 N.E.2d 614. In that case, the defendant entered into a six-month exclusive listing agreement. During the term of the agreement, the plaintiff tendered an offer from a buyer, but the defendant rejected the offer because it did not meet the requirement set forth in the listing agreement. Seven months after the listing agreement had expired, the plaintiff tendered another offer from the same buyer, which the defendant found acceptable. The defendant, however, informed the plaintiff that the tenant of the property had the right of first refusal upon any acceptable offer. After the tenant exercised his option to purchase, the plaintiff sued for its commission, contending the property had been sold as a result of its efforts. The court found there was no need to determine if the plaintiff was the procuring cause of the sale because there was no contract for employment between the parties at the time the second offer was submitted. The court decided the plaintiff was a mere volunteer, and the defendant was under no duty to compensate a volunteer. In *Drovers National Bank,* the plaintiff exerted its efforts

which it claimed were the procuring cause of the sale, after the termination of the contract for employment. In the present case, the plaintiff exerted his efforts before the listing agreement expired. Thus, *Drovers National Bank* is inapposite.

The defendants also rely on our decision in *Tom Brinkoetter & Co. v. Cresthaven Country Club, Inc.* (1983), 118 Ill. App. 3d 554, 454 N.E.2d 1182. In *Brinkoetter,* the defendant entered into a one-year listing agreement with the plaintiff which provided the defendant would pay the plaintiff a 10% commission on any sale made during the term of the agreement or within six months thereafter, if made upon terms acceptable to or accepted by the defendant within the term of the listing agreement. During the term of the agreement, the plaintiff secured an offer from a buyer, but the sale was not consummated because of the buyer's lack of financing and inability to satisfy other requirements. The defendant did not negotiate with the buyer after the termination of the listing agreement. Within one month after the agreement had expired, the defendant accepted an unsolicited, sealed bid from that buyer and his mother and sold the property to them. The purchase price actually paid was not acceptable to or accepted by the defendant during the term of the listing agreement. This court, therefore, held the plaintiff was not entitled to his commission.

In *Brinkoetter,* we did not hold, as the defendants contend, that the sale must be consummated before the listing agreement expires in order for a broker to recover his commission. In fact, we stated:

> "Recognition that an agent, who was a procuring cause of a sale, may have a right to a commission, although the term of the contract of listing has expired before the sale has been consummated, has existed in this State since *Griswold v. Pierce* (1899), 86 Ill. App. 406." (118 Ill. App. 3d 554, 558, 454 N.E.2d 1182, 1184.)

The issue, as stated in *Brinkoetter,* was whether the "procuring cause" doctrine applied under the circumstances of that case including the fact that the listing agreement set forth the conditions under which the plaintiff was entitled to a commission for a sale taking place after the expiration of the listing agreement. We held that it did not. The crucial factor in *Brinkoetter* was the contract language itself. In this case, the listing agreement did not set forth any such conditions.

■ Generally, the policy of the law is to protect a broker who has been employed and authorized to act and who, in good faith, has so acted. (*Edens View Realty & Investment, Inc. v. Heritage Enter-*

*prises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.) A broker is entitled to his commission if he procures a prospective purchaser who is ready, able, and willing to buy on terms acceptable to the seller or if the sale was procured through his efforts, regardless of whether the owner made the sale himself or through another broker. (*Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) A broker may be considered the procuring cause if he brings together the parties who ultimately consummate the transaction or is instrumental in the consummation. A reviewing court will not disturb the finding that a broker was the procuring cause of a sale unless it is against the manifest weight of the evidence. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.

In *Arthur Rubloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 380 N.E.2d 15, a judgment for a commission obtained by a leasing agent against a landlord was affirmed. The agent had procured the eventual lessee and engaged in lengthy negotiations. The lease had not been finalized within the time period of the listing agreement because the construction of the building to be leased had been delayed. After the listing agreement expired, the landlord took charge of the negotiations. The court noted the landlord had control of when the property would be ready for occupancy and thus controlled the time when negotiations would be likely to result in a lease. The court also noted other jurisdictions permit the broker to recover his commission when he brings the buyer and seller together and negotiations continue beyond the expiration of the listing agreement. (See generally Annot., 27 A.L.R.2d 1348 (1953).) The court quoted from *Humphrey v. Knobel* (1962), 78 Nev. 137, 142, 369 P.2d 872, 874:

> " '[W]here the broker has been the procuring cause ***, although the transaction was actually closed by the owner directly with the buyer at a price less (sometimes the same, sometimes more than the sum indicated in the brokerage contract and within a reasonable time after the expiration term of the contract, although without fraud or bad faith, recovery by the broker has been permitted.' " *Arthur Rubloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 369, 380 N.E.2d 15, 20; also quoted in *Pilson v. Roush* (1980), 82 Ill. App. 3d 187, 190-91, 402 N.E.2d 906, 909.

■ In the present case, Maley's inability to secure reasonable financing delayed the final sale. Thus, unlike *Comco*, the defendants did not completely control when the sale would occur. The outcome in *Comco,* however, did not depend solely on the defendant's control. The court decided the defendant's conduct in continuing negotiations

with the prospective lessee procured by the plaintiff, even though the broker's contract had expired, amounted to a waiver of the time limit fixed in that contract. (63 Ill. App. 3d 362, 370, 380 N.E.2d 15, 20.) In *Brinkoetter,* this court found that after the buyer could not get financing, negotiations ceased. (*Tom Brinkoetter & Co. v. Cresthaven Country Club, Inc.* (1983), 118 Ill. App. 3d 554, 454 N.E.2d 1182.) The defendants argue their negotiations were abandoned after the Federal Land Bank declined to finance Maley. The testimony indicates otherwise. Both Maley and Mrs. Shane testified the parties desired to complete the transaction at all times. They simply continued negotiations in an effort to find an alternative method of financing. Furthermore, the trial court found the final contract bore little economic difference from the one that the plaintiff had negotiated. Under these circumstances, the plaintiff is entitled to his commission.

For these reasons, the judgment of the trial court is affirmed.

Affirmed.

GREEN, P.J., and MILLS, J., concur.