In re William C. JONES and Jean K. Jones, Debtors.

William C. JONES and Jean K. Jones, Plaintiffs,

v.

STATE BANK OF ARTHUR, et al., Defendants.

Bankruptcy No. 88–90355.
Adv. No. 88–9047.

United States Bankruptcy Court,
C.D. Illinois,
Danville Division.

Sept. 20, 1988.

Bruce Meachum, Danville, Ill., for plaintiffs.

Keith Casteel, Decatur, Ill., for State Bank of Arthur.

James Martinkus, Champagne, Ill., for Westchester Group.

Jeff Richardson, Decatur, Ill., for Federal Land Bank.

Bob Kearney, Trustee.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

This matter is before the Court on the Motion for New Trial or, in the Alternative, Motion to Amend Order of Determination of Status of Claim filed by Westchester Group, Inc. requesting that the Court reconsider its Order of June 22, 1988, in which the Court found that the claim for realtor's commission by Westchester Group, Inc. and Jane T. Arthur & Associates, Inc. was an unsecured contract claim. Trial was held August 23, 1988, at which time the Court heard sworn testimony of the parties and arguments of counsel. The Court has also considered the Memoranda of Law submitted by the parties.

The Court finds that the pertinent facts in this matter are for the most part undisputed and are as follows:

1. On August 31, 1987, William and Jean Jones (Debtors) entered into a real estate listing agreement with Westchester Group, Inc. (Westchester) regarding the sale of certain farm real estate owned by the Debtors, located in Douglas County, Illinois.

2. Thereafter, Westchester engaged the services of Jane T. Arthur & Associates, Inc. (Arthur) to assist in the search for a buyer for the Debtors' real estate.

3. On or about November 5, 1987, Arthur showed Debtor's property to one Owen Maue.

4. On February 23, 1988, Owen Maue, through Arthur, made an offer to purchase the Debtors' property.

5. On February 24, 1988, Arthur circulated a real estate purchase agreement, including the Maue offer, for the parties' signatures.

6. In March 1988, a second real estate purchase agreement was prepared by Debtors' attorney, John Hirshfeld, in cooperation with buyer's attorney, George Sangmeister, which was eventually signed by the parties and bears the date of March 30, 1988.

7. The purchase price of Debtors' property remained constant from the initial offer in February 1988 to the time that Debtors signed the final sale contract in May 1988.

8. During the period of negotiations regarding the sale of Debtors' property, the Debtors were experiencing financial difficulties and the Debtors filed their petition in bankruptcy on April 6, 1988.

In its Motion, Westchester argues that its claim for a realtor's commission on the sale of Debtors' property should be given the status of an "administrative expense" pursuant to 11 U.S.C. § 503(b)(1)(A) which reads in pertinent part:

> "After notice and a hearing, there shall be allowed administrative expenses other than claims allowed under section 502(f) of this title, including the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...."

Westchester further argues that its listing agreement with the Debtors was executory in nature at the time Debtors filed their bankruptcy because Debtors did not actually sign the Real Estate Purchase Contract with buyer until some time in May 1988 after the filing of their bankruptcy and that, as such, Westchester performed valuable services to the estate after the commencement of the bankruptcy giving rise to treatment of their claim as an "administrative expense" pursuant to § 503(b)(1)(A).

The threshhold issue in this matter is whether the listing agreement between Debtors and Westchester was an "executory contract" at the time the Debtors

filed their bankruptcy. The most commonly accepted definition of an "executory contract" is that of Professor Countryman noted in *In re J.M. Fields, Inc.*, 22 B.R. 861, 864 (Bankr.S.D. New York 1982), as follows:

"A contract under which the obligations of both bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other."

Westchester contends that it did not perform its obligation such that it was entitled to its realtor's commission until the actual signing of the real estate sale contract by the Debtors which occurred after the filing of Debtors' bankruptcy petition even though the contract which was eventually signed bears the date of March 30, 1988, one week before the date of the bankruptcy.

█ To resolve this issue, the Court must determine at what point in time Westchester had performed sufficiently under its listing agreement with Debtors so as to have been entitled to its realtor's commission as a matter of law. Westchester argues that its commission was not earned until the Debtors signed the enforceable contract of sale and cites for authority, *United Investors v. Tsotsos*, 132 Ill.App.3d 175, 87 Ill.Dec. 439, 477 N.E.2d 40 (1st Dist.1985), and *Fox v. Stewart*, 91 Ill.App.3d 201, 46 Ill.Dec. 828, 414 N.E.2d 881 (2nd Dist.1980), which Westchester contends stand for the proposition that a real estate broker does not earn a commission until such time as he produces a ready, willing, and able buyer; such time being when the enforceable real estate sale contract is signed. The Court has reviewed these authorities and finds that, while it is clear that the question of the realtor's commission is no longer open at the time of the contract signing, this is not to say that the contract signing is absolutely necessary. There are many instances in which a real estate broker can earn its commission without there ever being a signed, enforceable, contract of sale. Illinois Courts have fol-

lowed the "procuring cause" doctrine which holds that a real estate broker earns its commission if it procures a buyer who is ready, able, and willing to buy, on terms acceptable to the seller. *See: Lyons v. Shane*, 133 Ill.App.3d 820, 88 Ill.Dec. 843, 479 N.E.2d 456 (4th Dist.1985); *Brinkoetter & Company v. Cresthaven Country Club, Inc.*, 118 Ill.App.3d 554, 73 Ill.Dec. 933, 454 N.E.2d 1182 (4th Dist.1983). It is clear from the evidence adduced at trial that a buyer was found in February 1988. The Debtor, William Jones, testified that he agreed with the terms proposed by the buyer in February or March 1988 and that only technical matters remained to be resolved. The Court finds that the final real estate sale contract which was executed by all parties was essentially the same as the original agreement prepared by Arthur in February 1988. The Court is of the opinion that Westchester had earned its commission prior to the bankruptcy filing. This is further bolstered by the fact that by their own testimony neither Westchester nor Arthur performed any sales functions after the end of March 1988. The Court has concluded that, had there never been a signed sale contract, Westchester would have been successful in a suit against the Debtors for its realtor's commission based upon the Debtors' assent to the terms of buyer's offer in February 1988. *See: Wolfenberger v. Madison*, 43 Ill.App.3d 813, 817, 2 Ill.Dec. 489, 357 N.E.2d 656 (2nd Dist.1976).

█ Given the facts presented at trial in relation to the relevant Illinois law, the Court must conclude that the listing agreement between Westchester and the Debtors was not an executory contract at the time the Debtors filed their bankruptcy because Westchester had performed sufficiently on its obligation so as to have an action for breach against the Debtors prior to the bankruptcy. Following the authority of *In re J.M. Fields, Inc., supra,* and *In re Godwin Bevers Co., Inc.*, 575 F.2d 805 (10th Cir.1978) the Court reaffirms its Order of June 22, 1988, finding the claim of Westchester Group, Inc. to be a pre-petition, unsecured, contract claim.

Having found that Westchester's contract was not executory in nature, the Court need not address the issues of court approval and claim priority as they do not apply to pre-petition contract claims.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.